**B.R. GRIFFIN, et al.,**
**Plaintiffs–Appellants,**

v.

**Cloyce K. BOX, et al.,**
**Defendants–Appellees.**

**No. 89–1019.**

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1990.

Alan Bromberg, Jenkens & Gilchrist, Dallas, Tex., Richard G. Smith, Gary D. Babbitt, Boise, Idaho, for plaintiffs-appellants.

Robert L. Meyers, III, Brett A. Ringle, John R. Henderson, William E. Marple, Jones, Day, Reavis & Pogue, Dallas, Tex., David B. Tulchin, Sullivan & Cromwell, New York City, for Box, CKB Assoc., CKB Petro., and Box Bros.

William J. Burnett, Dallas, Tex., for OKC Ltd.

Before GOLDBERG, GARWOOD, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiffs-appellants B.R. Griffin, Martin Hart, David Hawk, James A. Lyle, Hayden McIlroy, and J.R. Simplot (collectively, appellants) appeal from two orders granting the motions for preliminary injunctive relief of defendants-appellees Cloyce Box, CKB & Associates, Inc., OKC Limited Partnership, CKB Petroleum, Inc., and Box Brothers Holding Co. We affirm.

## Facts and Proceedings Below

On May 13, 1980, the shareholders of OKC Corporation (OKC Corp.) adopted a plan to liquidate and dissolve the corporation. Pursuant to the plan, OKC Corp.'s assets were transferred to a limited partnership, with the stockholders then exchanging their stock for similarly proportional limited partner interests in the partnership. The first stage of the plan called for the creation of OKC Limited Partnership (OKC LP), the general partners of which are Cloyce Box and a corporation controlled by him, CKB & Associates, Inc. (collectively, the general partners). The OKC Corp. served as the initial limited partner. The general partners and OKC Corp. signed the Amended and Restated Certificate and Articles of Limited Partnership (partnership agreement) on May 12, 1981 and filed the document with the Texas Secretary of State on May 28, 1981. The next phase entailed CKB, OKC Corp., and OKC LP effecting a depositary agreement with MBank of Dallas, under which OKC Corp. deposited with MBank its limited partnership units. MBank then issued depositary receipts to OKC Corp. shareholders of record as of May 1, 1981 in exchange for their stock certificates. The receipts evidenced ownership of units of limited partnership interest in OKC LP. This agreement was also signed on May 12, 1981.[1] The depositary receipts are now traded on the Pacific Stock Exchange.[2]

On September 18, 1981, the general partners filed a proxy statement with the Securities and Exchange Commission (SEC) regarding a partnership meeting to be held on October 19, 1981. In the proxy statement, the general partners sought approval from all receipt holders of record on August 31, 1981 of Cloyce Box and CKB & Associates as general partners. At the meeting, receipt holders approved the designation of Box and CKB & Associates as general partners.

In 1987, appellants formed a committee of receipt holders disgruntled with the performance of the general partners whose purpose was to replace the general partners with Hydrocarbons Management, Inc., a corporation controlled by the committee, by soliciting consents from OKC LP's receipt holders, beginning November 6, 1987.[3] The consents provided for the replacement of the general partners and were solicited under a provision of the partnership agreement allowing the limited partners to take certain actions by written consents without a formal meeting. On November 18, general partner Cloyce Box mailed letters to all receipt holders urging them not to sign the committee's consent cards. The letters also related that "[a]dditional important information about this opposition group will be mailed to you at the earliest practicable time." Box issued a press release to this effect on November 20, 1987.

---

1. In the exchange, 20,391,170 depositary receipt units were distributed to OKC Corp. shareholders. Only approximately 6,000,000 depositary receipt units continue to be held by the former OKC Corp. shareholders.

2. On June 18, 1981, the general partners filed a Securities and Exchange Commission Form 10 to register the depositary receipt units as equity securities with the Securities and Exchange Commission pursuant to Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78*l*.

3. Contemporaneous with that action, appellants filed the instant suit on November 9, 1987 against the general partners, OKC LP, CKB Petroleum, Inc., and Box Brothers Holding Co., alleging violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, and state partnership laws, as well as common-law fraud and negligent misrepresentation. Jurisdiction was based on 28 U.S.C. § 1331 (federal question) and pendent jurisdiction. Declaratory relief was also sought.

The general partners responded to the committee's actions in a November 24 letter addressed to it by asserting that recent amendments filed by OKC LP to its partnership agreement required "a meeting and vote for the removal of a General Partner." The general partners also informed the committee in the letter that, "in the unlikely event the Amendments are held by some competent authority to be invalid," they were invoking a December 5, 1987 deadline for the return of consents pursuant to section 4.02 of the partnership agreement, which states in pertinent part: "For purposes of obtaining a written consent, a General Partner may require response by a specified date not later than 30 days after the date any proposal is submitted to the Limited Partners." In this regard, the general partners took the position that only receipt holders who were originally shareholders of OKC Corp., as opposed to their transferees, had been admitted by the general partners as limited partners of OKC LP and were thereby eligible to vote on its matters.

As of December 24, 1987, appellants had received executed consents from the owners of 10,830,969 depositary receipts voting in favor of removing Cloyce Box and CKB & Associates as general partners. Despite an attempt on the part of the general partners to solicit revocations of the consents, according to the audit partner of Arthur Young & Company who tabulated the OKC LP vote, appellants' committee carried slightly over fifty percent of the outstanding votes as of February 11, 1988.

In a letter of December 30, 1987, appellants informed the general partners of the consent solicitation results as of December 24. Appellants then filed documents with the Texas Secretary of State on January 21, 1988 to amend the OKC LP partnership agreement in purported conformity with the results of the election. As a result of this action, the general partners moved in the pending suit, *see* note 3 *supra*, for a preliminary injunction to restrain appellants from interfering with the management of OKC LP. Appellants countered by filing in the same proceedings a Request for Injunctive Relief seeking a judicial determination of the identity of the general partners following the voting contest or, in the alternative, a determination of who is eligible to vote as a limited partner.

On February 22, 1988, the district court made several rulings in the case. First, it determined that the purported amendments to the partnership agreement eliminating the consent solicitation procedure when removal of the general partners is sought were invalid. The court also ruled that the general partners properly imposed a deadline by which consents had to be returned. Third, the court held that depositary receipt transferees were not entitled to vote in partnership matters because the general partners had not admitted any depositary receipt transferees as substituted limited partners, a matter that under the partnership agreement was within the discretion of the general partners. The court also ruled that the general partners had not waived the requirement under the partnership agreement that a transferee must be admitted as a substituted limited partner before voting on OKC LP's affairs. Finally, the court held that even if the general partners had made statements asserting that transferees are limited partners, the general partners cannot be estopped from enforcing the partnership agreement because they cannot waive its terms.

As a result of the foregoing, the court on February 22, 1988 entered an order which granted in part and denied in part the respective motions for preliminary injunction of both appellants and appellees. The court enjoined appellants from representing themselves or Hydrocarbons Management as general partners of OKC LP; from undertaking any action on behalf of the partnership or in any way interfering with the general partners' ability to manage it; and from filing any documents with the Texas Secretary of State purporting to reflect the election of a new general partner or to name transferees as limited partners. The court also ordered both appellants and the general partners to cancel their purported amendments of the partnership agreement. On December 6, 1988, the court, without a further evidentiary hear-

ing, denied appellants' motion to alter or amend the February 22 order, as well as their supplemental request for a preliminary injunction ordering the general partners to admit as limited partners all transferees who have shown themselves to be eligible citizens under the partnership agreement and have requested admission as substituted limited partners. The court observed that "all the arguments made by plaintiffs were raised or could have been raised at the preliminary injunction hearing."

The case remains pending on the merits in the district court, and this interlocutory appeal is before us under the provisions of 28 U.S.C. § 1292(a)(1). We accordingly limit our review to the granting or denial of the temporary injunctive relief sought. *See, e.g., Association of Co–Operative Members, Inc. v. Farmland Industries, Inc.*, 684 F.2d 1134, 1138 (5th Cir.1982), *cert. denied*, 460 U.S. 1038, 103 S.Ct. 1428, 75 L.Ed.2d 788 (1983).

## Discussion

■■■ On appeal, appellants seek a reversal of the district court's order on the requests for preliminary injunction granting the general partners injunctive relief and denying insurgents the same. The effect of the district court's complained of orders is in essence to maintain the status quo as it existed when this suit was filed. Particularly in these circumstances, we review under an abuse of discretion standard. The clearly erroneous standard insulates the district court's factual determinations, but its legal conclusions are subject to full review. *See, e.g., White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir.1989); *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir.1984). The findings of fact and conclusions of law made in connection with an action on a request for preliminary injunction generally "are not binding

at trial on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).

There are four elements a movant must establish to obtain a preliminary injunction: (1) that there is a substantial likelihood of success on the merits; (2) that there is a substantial likelihood that he will suffer irreparable injury if the injunction is not issued; (3) that any threatened injury outweighs the damage the injunction might cause the opponent; and (4) that the injunction will not disserve the public interest. *Apple Barrel Productions, Inc.* at 386.

■■ Appellants first dispute the district court's determination that the general partners have not admitted anyone as substituted limited partners. They contend that, under the OKC LP partnership and the depositary agreements, depositary receipt transferees are entitled to become substituted limited partners. Appellants further maintain that the evidence shows that the general partners made a blanket admission of transferees as substituted limited partners.

All parties to this litigation agree that, under the partnership and depositary receipt agreements, the initial unit holders of the depositary receipts, *i.e.*, the former OKC Corp. shareholders, were entitled to become and in fact have been admitted as limited partners of OKC LP.[4] Appellants base their argument that all transferees as well are entitled to become limited partners on the language of the partnership and the depositary agreements, as read together.

Appellants turn first to the depositary agreement. There, section 4.01 declares that depositary receipts are transferable; section 4.02 expands on this, stating that following a transfer, "the transferor shall be deemed to have given the transferee the right to become a Substituted Limited Partner in OKC in respect of the transferred

---

4. Section 9.02 of the partnership agreement confirms this and, in pertinent part, reads:

"The General Partner hereby consents to the transfer of all Limited Partnership Units owned by OKC to the holders of record at the close of business on May 1, 1981, of shares of Common Stock of OKC by (a) depositing the

Certificates of Ownership of such Units with a bank or trust company and (b) providing for the issuance to such holders of record of depositary receipts therefor, and such holders of record shall be substituted for OKC as Limited Partners hereunder, subject to the provisions of Section 9.03 and 9.04 hereof."

OKC Units subject to the applicable provisions of the Partnership Agreement." Section 4.03 declares, among other things, that by accepting a depositary receipt the transferee becomes a party to the depositary agreement and agrees to be bound by its "terms and conditions." That section also provides that a transferee "shall ... be deemed to have requested admission as a Substituted Limited Partner in OKC and to have agreed to be bound by the terms and conditions of the Partnership Agreement" at the time of transfer. Section 4.04 states that "[a]s provided in the Partnership Agreement, the transferee ..., pending his admission as a Substituted Limited Partner in OKC, has the rights of an Assignee in respect of the OKC Units ... and is entitled to admission as a Substituted Limited Partner, unless he is a Non-citizen...." [5] Section 4.05 provides that "[u]nder Section 9.02 of the Partnership Agreement," a transferee "will, if he is an Eligible Citizen and if he has received the permission of the general partners of OKC, become a Substituted Limited Partner...." [6]

As additional support for their contention that the general partners are required to admit all eligible citizen transferees as substituted limited partners, appellants assert that "[i]t is hardly reasonable to suggest that the Depositary Receipt structure would have been implemented solely to transfer an economic interest in the Partnership, separate from voting or other legal rights...." They point to the public trading of OKC LP units on the Pacific Stock Exchange as fostering an expectation on the part of securities purchasers that the units would have voting rights. However, appellants fail to recognize that securities lacking voting rights, such as preferred stocks, are commonly traded on exchanges. The Pacific Stock Exchange expressly permits trading in such securities. The public trading of OKC LP units does not require acceptance of appellants' argument that the transferees are entitled to become substituted limited partners.

The depositary agreement makes clear that its provisions are subject to those of the partnership agreement. Section 9.02 of the partnership agreement—expressly referred to in section 4.05 of the depositary agreement—invests in the general partners the discretion to admit transferees as limited partners. In pertinent part, section 9.02 reads:

"A transferee of all or a part of Units held prior thereto by a Limited Partner may be admitted to the Partnership as a substituted limited partner only if the transferee has received the permission of the General Partners, which permission may be withheld in the sole discretion of the General Partners. Unless and until any transferee becomes a substituted limited partner, the transferee's status and rights shall be limited to the rights of a transferee of limited partnership interests under the Texas Uniform Limited Partnership Act."

We find this language to be clear and unequivocal. Although the depositary agreement contains some language which, in isolation, might indicate an entitlement to become a substituted limited partner, the depositary agreement itself makes that language subject to the partnership agreement. Section 4.05 of the depositary agreement specifically references section 9.02 of the partnership agreement and its requirement for general partners' permission to become a substituted limited partner. The

---

**5.** The depositary agreement defines a Non-citizen as "a person who is not an Eligible Citizen...." An Eligible Citizen is

"(a) a citizen or national of the United States, or (b) an alien lawfully admitted for permanent residence in the United States as defined in 8 USC 1101(a)(20), or (c) a private, public or municipal corporation organized under the laws of the United States or of any State or of the District of Columbia, or territory thereof, or (d) an association (including a partnership) of such citizens, nationals, resident aliens, or private, public or municipal corporations, States or political subdivisions of States."

**6.** Section 7.03 of the depositary agreement includes the provision that "[r]ecord holders of Depositary Receipts will not be entitled to notice or the right to vote as limited partners unless they are Substituted Limited Partners."

The partnership agreement grants voting rights only to partners, and does not authorize voting by transferees of limited partners who are not admitted as substituted limited partners.

partnership agreement makes clear that (except for the former stockholders, *see* note 4, *supra*) no absolute right to the status of substituted limited partnership exists.[7]

▪ Appellants further argue that the general partners owe a fiduciary duty and a duty of good faith and fair dealing to the transferees that requires them to admit all eligible citizen transferees as substituted limited partners. As support for this position, appellants present authority concerning the fiduciary relationship a general partner has with his partners. *Huffington v. Upchurch*, 532 S.W.2d 576 (Tex.1976); *Crenshaw v. Swenson*, 611 S.W.2d 886 (Tex.Ct.App.1980); *Palmer v. Fuqua*, 641 F.2d 1146 (5th Cir.1981). This authority, however, does not address fiduciary duties to transferees who are not partners, general or limited. Although this Court has uncovered no Texas precedent on the subject, courts in Nevada and California have ruled that an assignment of a partnership interest does not bring the transferee into a fiduciary relationship with the remaining partners. *See Bynum v. Frisby*, 73 Nev. 145, 311 P.2d 972, 975 (1957); *Kellis v. Ring*, 92 Cal.App.3d 854, 155 Cal.Rptr. 297, 299–300 (1979). No contrary decisions have been cited to us, nor has our research disclosed any.

▪ As additional support for their fiduciary duty argument, appellants, citing *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507–08 (Tex.1980), assert that the general partners owe transferees a fiduciary duty because the transferees have reposed a "special confidence" in the general partners. Following *Moore*, we note that the question appellants have presented "is one of equity and the circumstances out of

which a fiduciary relationship will be said to arise are not subject to hard and fast lines." *Id.* at 508. In *Moore*, the court determined that the defendant had consented to a fiduciary relationship between himself and his infirm aunt when he had accepted the transfer of two bank accounts from her as joint tenant with survivorship rights in her funds. *Id.* at 509. Here, although the general partners consented in advance to the general transferability of OKC LP units of interest, by virtue of the terms of the partnership agreement and the depositary agreement, the evidence does not compel the conclusion that they have entered into any special relationship with any particular transferees. It is not conclusively established that the transferees became such as the result of anything relevant other than exercise of the transfer rights provided for in the depositary agreement and the partnership agreement; and, under the partnership agreement, the general partners have the discretion whether to admit transferees as substituted limited partners and thus to enter into a recognized fiduciary relationship with them. In short, the evidence does not require the conclusion that the general partners had a fiduciary duty to automatically admit any and all "Eligible Citizen" transferees as substituted limited partners.[8]

▪ We turn next to the question whether appellants have established that the general partners actually gave permission to become substituted limited partners to a sufficient number of the "voting" transferees. Appellants draw our attention to the materials distributed by the general partners in reference to the 1981 proxy vote. In the proxy statement, the general part-

7. Under Texas law a transferee of the partnership interest of a limited partner may become a limited partner only if all partners consent unless the partnership agreement provides otherwise. Tex.Rev.Civ.Stat.Ann. art. 6132a, §§ 3(a)(1)(K) & 10(a)(6). Here, section 9.02 of the partnership agreement provides otherwise.
   The parties proceed before us on the assumption that the only substantive law relevant to the disposition of this appeal is Texas law, and we do likewise.

8. Appellants likewise invoke the Texas law duty of good faith and fair dealing. Under Texas

law, such a duty arises only when there is a special relationship between the parties. *See Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). We hold that the evidence does not compel the conclusion that such a special relationship existed between the general partners and the transferees generally such that a duty of good faith and fair dealing arose so as to mandate the automatic admission as substituted limited partners of any and all eligible citizen transferees.

ners represented that "[depositary receipt] holders will be entitled to one vote for each unit of interest represented by a Depositary Receipt" and that "the Partnership had issued and outstanding and entitled to vote 20,391,170 units represented by Depositary Receipts held by 2,225 holders of record." The statement also read "[t]he general partners believe that the Depositary Receipt holders should be allowed to approve or disapprove the Partnership Agreement and arrangements with the general partners." Appellants contend that the general partners' representations in the proxy materials demonstrate that they made a blanket admission of transferees as substituted limited partners.

Appellants also point to proxy materials the general partners distributed to depositary receipt unit holders in November 1986 prior to a scheduled partnership meeting that never transpired. In the proxy statement, the general partners asserted that "the Partnership had issued and outstanding and entitled to vote 20,391,170 Units represented by Depositary Receipts held by 4,231 holders of record."

As additional evidence that the general partners gave transferees permission to become substituted limited partners, appellants note that in a September 1983 newsletter to unit holders the general partners stated "[a] unitholder is a limited partner and, accordingly, owns a direct interest in proven oil and gas reserves." Further, in writing to J.R. Simplot in November 1986, general partner Cloyce Box acknowledged Simplot as a limited partner, even though Simplot is a transferee, and stated that there were 5,000 limited partners of OKC LP.

The general partners maintain that they have never granted transferees permission to become substituted limited partners. Public trading of OKC LP units on the Pacific Stock Exchange is not shown to have begun until after the 1981 proxy materials were mailed to unit holders and the 1981 OKC LP meeting was held. The evi-

dence does indicate, however, that some OKC LP units had likely changed hands before the 1981 meeting and the transferees may have voted at it without having been admitted as substituted limited partners. Nevertheless, there is no clear indication of how many—or which—units were involved, or that this was material at the time or that the general partners paid any attention to the matter. Cloyce Box testified that he mistakenly referred to J.R. Simplot as a limited partner in his November 1986 letter to Simplot, blaming the error on information received from OKC LP's internal staff, and that he never intended to waive the provision that the general partner must consent to the admission of a substituted limited partner. The district court found that "the evidence does not show that the general partners actually or impliedly intended to waive the requirement that an owner of units must be admitted as a substitute Limited Partner before he or she may vote."

■ Appellants further maintain that the general partners are estopped from exercising or, alternatively, have waived their discretion under the partnership and depositary agreements to admit substituted limited partners, because the general partners treated transferees as having voting rights, something on which the transferees relied. However, there is no clear, much less compelling, proof of any such reliance, and reliance is an essential element of any estoppel claim. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952).[9] Appellants seem to argue that because of the general partners' past conduct, all transferees have effectively received the general partners' permission to become limited partners and may pass their limited partner status to any parties to whom they may in the future transfer their OKC LP units. Thus, through the theories of estoppel or waiver, appellants would in effect require that the district court, in ruling on a preliminary injunction, to amend the part-

---

**9.** Regarding waiver, we cannot conclude that the evidence unequivocally establishes that the general partners, who are obligated to act in the interest of the partnership, intended permanent-

ly to waive their discretion to admit transferees as substituted limited partners. *See Young v. Amoco Prod. Co.,* 610 F.Supp. 1479, 1489 (E.D. Tex.1985), *aff'd,* 786 F.2d 1161 (5th Cir.1986).

nership agreement to make all transferees—present and future—substituted limited partners. The record is simply not sufficiently developed and unequivocal in this respect to establish that the district court abused its discretion in declining to so rule on preliminary injunction.

Although it appears that the general partners might have in effect granted permission to certain transferees to become substituted limited partners (or, perhaps, may even have done so by waiver or estoppel), appellants have not demonstrated with specificity which, if any, transferees have received such permission. Thus, we cannot find that the record so clearly compels the conclusion, so that the district court was required to frame its preliminary injunction rulings on that basis, that at any time in the consent battle a majority of the limited partners voted in appellants' favor.[10]

### Conclusion

The district court correctly determined that the depositary agreement and partnership agreement do not grant to any and all eligible citizen transferees the right to be admitted as substituted limited partners without the prior consent of the general partners. This was the central legal issue on the claims for preliminary injunction. The district court's now complained of rulings in substance maintained the status quo, which is the central purpose of a preliminary injunction. *See Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.*, 441 F.2d 560, 561 (5th Cir.1971). With respect to appellants' theories of general partner actual consent, waiver, estoppel, and breach of fiduciary duty, the record as a whole does not so clearly establish that appellants were then entitled to take control of the partnership on any such basis as to constitute the district court's rulings an abuse of its discretion. Whether a different, more complete showing at trial on the merits would justify a different result is not the issue, and the rulings in this respect at the preliminary injunction

stage are not binding at trial on the merits. *Camenisch, supra.* In this connection, we note that a district court addressing an application for preliminary or temporary injunction generally faces significant time constraints not present at the ultimate merits hearing and determination, and our opinion, which only disposes of the issues on the temporary or preliminary injunction, is not intended to foretell the district court's final determination after a full ventilation of the facts. *Camenisch,* 101 S.Ct. at 1834.

Accordingly, the district court's challenged orders are

AFFIRMED.

---

**10.** It is thus unnecessary to reach on this appeal appellants' complaints concerning the general partners' imposition of a thirty-day deadline, expiring December 5, 1987, for the return of the consents in response to appellants' solicitation.