B.R. GRIFFIN, Martin T. Hart, David H. Hawk, James A. Lyle, Hayden McIlroy and J.R. Simplot, Plaintiffs–Appellees,

v.

Cloyce K. BOX, CKB & Associates, Inc., OKC Limited Partnership, CKB Petroleum, Inc. and Box Brothers Holding Co., Defendants–Appellants.

No. 91–7080.

United States Court of Appeals, Fifth Circuit.

March 5, 1992.

Rehearing and Rehearing En Banc Denied April 1, 1992.

David B. Tulchin, Sullivan & Cromwell, New York City, William J. Burnett and Arthur Mitchell, Dallas, Tex., for C. Box, et al.

John M. Wilson and Robert L. Theriot, Liskow & Lewis, New Orleans, La., for OKC Ltd. Partnership.

Richard A. Greener, Fredric V. Shoemaker, Cosho, Humphrey, Greener & Welsh, Boise, Idaho, and David R. Norton, Bailey & Williams, Dallas, Tex., for B.R. Griffin, Martin T. Hart, et al.

---

**14.** This Court has found excessive a 22–day delay between plea and motion to withdraw.

*Carr,* 740 F.2d at 345.

Before WILLIAMS, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Defendants appeal a preliminary injunction enjoining the conversion of OKC–LP from a limited partnership into a corporation. Our overarching issue is whether plaintiffs enjoy the right to vote on the proposed conversion.

The district court found in 1988 that plaintiffs did not have the right to vote because they were transferees of partnership units without approval by the general partners as substituted limited partners. We affirmed, finding that under the evidence the transferees were not substituted limited partners entitled to vote their units. *Griffin I*, 910 F.2d 255 (5th Cir.1990).

We find that, under the law as stated in *Griffin I*, the district court abused its discretion in granting a preliminary injunction to plaintiffs. We vacate the preliminary injunction and remand for further proceedings.

I.

The facts of this controversy are fully stated in *Griffin I*. We repeat only the facts necessary to understanding this appeal. In 1981, the shareholders liquidated OKC Corporation transferring its shares to OKC Limited Partnership. Under the liquidation plan, OKC Corp transferred its stock to MBank of Dallas pursuant to a depository agreement. MBank then issued depository receipts to the former shareholders of OKC Corp, representing their interests as limited partners in OKC–LP. These interests were proportional to the limited partners' share of OKC Corp stock. On August 31, 1981, the limited partners of OKC–LP voted to approve Cloyce Box and CKB & Associates [1] as general partners of OKC–LP.

In November of 1987, depository receipt holders dissatisfied with the performance of the general partners, formed a committee dedicated to replacing Box and CKB with a new general partner. They filed this lawsuit against the general partners, alleging claims for fraud, breach of fiduciary duty, breach of the partnership agreement, violations of federal racketeering laws, and breaches of state-law footed duties of good faith and fair dealing. They attempted to proceed both directly and derivatively. They also solicited consents for the replacement of the general partners.

By December 24, 1987, plaintiffs held executed consents from the holders of 10,-830,969 depository receipts, slightly more than 50% of the outstanding votes, according to one auditor. Plaintiffs then filed documents with the Texas Secretary of State, purporting to amend the partnership agreement to replace the general partners.

The general partners, however, contended that many holders of the depository receipts who responded to the soliciting of consents were ineligible to vote. According to the general partners, by the partnership and depository agreements only original shareholders of OKC Corp were automatically limited partners in OKC–LP with a vote; a transferee has no voting rights unless the general partners approved the new holders as substituted limited partners.

Plaintiffs responded with a request for injunctive relief and, in relevant part, to identify the general partners, a determination of the voting rights of depository receipt holders, and an injunction against " 'out-of-the-ordinary' sales, purchases, acquisitions, or decisions regarding the partnership." *District Court Order*, February 22, 1988, at 14. The general partners countered with a request that the district court enjoin plaintiffs from interfering with management.

The court agreed that, under the partnership and depository agreements, depository receipt transferees were not entitled to vote their units unless the general partners first approved the transferees as substituted limited partners. The district court also found that "the evidence does not show that the General Partners actually or impli-

---

1. CKB & Associates is a corporation controlled by Cloyce Box.

edly intended to waive the requirement that an owner of units must be admitted as a substitute Limited Partner before he or she may vote." *Id.* at 10. The district court then enjoined plaintiffs from interfering in the general partners' day-to-day operations of OKC–LP. It also enjoined defendants from "unilaterally attempting to amend the Partnership Agreement, which amendment would alter or adversely affect the rights of the limited partners." *Id.* at 16.

A panel of this court affirmed. *Griffin I*, 910 F.2d 255 (5th Cir.1990). *Griffin I* found that the partnership agreement was "clear and unequivocal" in forbidding transferees from voting their units absent approval as substituted limited partners by the general partners. The court also found insufficient evidence that the general partners had, by either waiver or estoppel, granted permission to transferees to become substituted limited partners with the right to vote. *Griffin I* found that "there is no clear, much less compelling, proof of [transferees'] reliance, and reliance is an essential element of any estoppel claim." According to *Griffin I:*

> "Although it appears that the general partners might have in effect granted permission to certain transferees to become substituted limited partners (or, perhaps, may even have done so by waiver or estoppel), appellants have not demonstrated with specificity which, if any, transferees have received such permission."

*Id.* at 263. The court found no abuse of discretion in enjoining plaintiffs from interfering with the management of OKC–LP pending resolution of plaintiffs' claims. *Griffin I* did not foreclose the possibility that, with a *"different, more complete showing* at trial on the merits," plaintiffs might be able to prove that the general partners implicitly gave permission to the transferees to vote their units as substituted limited partners. *Id.* (emphasis added).

The claims in this appeal arise out of the general partners' present plan to return to a corporate form by transferring the assets of OKC–LP to Box Energy, a Delaware corporation controlled by Cloyce Box. Box Energy stock would be distributed to OKC–LP unit-holders in return for their interests in OKC–LP stock. Limited partners who have the right to vote would receive "Class A" voting stock; depository receipt holders who lack this right would receive "Class B" non-voting stock. Limited partners holding 2,564,460 units in OKC–LP approved this plan. 26,850 units were voted against the plan.

Plaintiffs moved for a temporary restraining order and a preliminary injunction, restraining OKC–LP, the general partners, and Box Energy from transferring OKC–LP's assets to Box Energy. The district court granted the temporary restraining order and held a hearing on the application for a preliminary injunction.

Plaintiffs alleged that they would be irreparably injured if OKC–LP were converted into a corporation. They argued that the conversion was illegal, because they had not been permitted to vote their units against the transaction as substituted limited partners. They also argued that the partnership agreement required the general partners to obtain an I.R.S. ruling on the conversion's tax consequences before they could complete the proposed conversion. Plaintiffs relied on the evidence produced in the earlier preliminary injunction hearing, supplemented by testimony of several new witnesses.

This time the district court granted plaintiffs' request for a preliminary injunction, finding evidence "sufficient to make a prima facie case that the general partners waived the applicable provisions [barring transferees from voting units without the approval of general partners]." According to the district court, its earlier ruling did not bind it in deciding the 1991 motion for preliminary injunction. The court also ruled that plaintiffs would be irreparably injured if they were deprived of the benefits of the partnership agreement without a right to vote against the plan, an injury not mitigated by any corporate voting rights awarded after the conversion to a corporate form.

The general partners, OKC–LP, and Box Energy appealed the preliminary injunction.

## II.

We review the district court's preliminary injunction for abuse of discretion. *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.,* 600 F.2d 1184, 1187 (5th Cir.1979). A preliminary injunction may not issue without a showing that (1) there is a substantial likelihood that plaintiffs will prevail on the merits; (2) there is a substantial threat that plaintiffs will suffer irreparable injury if the injunction is not granted; and (3) the threatened injury to plaintiffs outweighs the threatened harm that the injunction will do to defendants; and (4) the preliminary injunction will not disserve the public interest. *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 572–73 (5th Cir. 1974).

The district court found that plaintiffs had made a prima facie case that the general partners had "waived" their right to exclude plaintiffs from becoming substituted limited partners with the right to vote. The district court relied in part on a letter from Cloyce Box to J.R. Simplot, a transferee and plaintiff in this case. In this letter, Box describes Simplot as a "limited partner" and states that OKC–LP has 5,000 "limited partners". *Griffin I,* 910 F.2d at 262. The district court further supported its decision by noting a "lack of affirmative evidence that the general partners considered the transferees as anything but substitute limited partners until these transferees sought to oust the general partners."

We find that the district court abused its discretion in enjoining the conversion to a corporate form. The theory that transferees gained a right to vote without approval as substitute limited partners by waiver has no legal basis and plaintiffs have no likelihood of prevailing. Plaintiffs have also failed to demonstrate a sufficient basis for finding detrimental reliance upon any authorized assurance that transferees had voting rights.

A panel of this court held in *Griffin I* that the partnership agreement was "clear and unequivocal" in stating that a transfer of partnership units carried no right to vote, unless the transferee obtained permission from the general partners to become substituted limited partners. *Griffin I,* 910 F.2d at 260. Moreover, the *Griffin I* court held that there was no "clear indication" that the general partners actually gave permission to the transferees to vote their units. *Id.* at 262.

The plaintiffs contend that the general partners waived their right to exclude the substituted limited partners from voting. We find any such waiver theory to be incoherent. A waiver of a right is the "voluntary surrender of a known right." *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 552 (5th Cir.1990). Under Article 9.02 of the Partnership Agreement, the general partners have the right to give permission to transferees to become substituted limited partners with voting rights.[2]

We will assume *arguendo* that the evidence is sufficient to show that the general partners did, in fact, waive their powers under Article 9.09 of the Partnership Agreement. Even so, the only result of such a waiver would be that general partners would lack powers that they otherwise would have to *admit* transferees as substituted limited partners. In such a case, the transferees are left as holders of units which "shall not confer upon the transferee any right to become a substituted limited partner." The general partners' waiver, therefore, cannot alter the non-voting status of transferees, absent some other source for that change of status.

The plaintiffs' waiver theory seems to be based on an assumption that transferees would become substituted limited partners

---

**2.** Article 9.02 provides in relevant part that the transfer of partnership units "shall not confer upon the transferee any right to become a substituted limited partner. A transferee of all or a part of Units held prior thereto by a Limited Partner may be admitted to the Partnership as a substituted limited partner only if the transferee has received the permission of the General Partners, which permission may be withheld in the sole discretion of the General Partners."

automatically unless the general partners affirmatively excluded them from such status. However, the plaintiffs' assumption is groundless: Article 9.09 explicitly states that transferees become substituted limited partners "only" if the general partners affirmatively exercise their powers to admit them as such. If the general partners have waived their powers under Article 9.09, then the transferees are left simply as holders of non-voting units. They are not "waived" into voting status as substituted limited partners.

Plaintiffs also advance an estoppel theory, under which the general partners are estopped from withholding their permission for the transferees to become substituted limited partners. This theory is legally coherent, but factually unsupported by the record. Its essence is that, by their past conduct, the general partners are estopped from challenging the "limited partner status" of the transferees, because the transferees reasonably relied to their detriment on the general partners' past conduct implying that they were substituted limited partners.

We will assume that the general partners' representations in proxy solicitation materials and letters were ambiguous about the status of the transferees. Regardless, plaintiffs cannot prove estoppel without proving that the transferees reasonably relied on the general partners' ambiguous representations to their detriment. *Edwin M. Jones Oil v. Pend Oreille Oil,* 794 S.W.2d 442, 447 (Tex.App.—Corpus Christi, 1990).

The *Griffin I* court explicitly found that "there is no clear, much less compelling, proof of any such reliance" in the record before the district court in February, 1988. *Griffin I,* 910 F.2d at 262. We left open the possibility in *Griffin I* that the plaintiffs might prove estoppel with "a *different, more complete* showing at trial on the merits." *Id.* at 263 (emphasis added). However, under the law of the case, there is no reliance unless plaintiffs produced new evidence of reliance not before the *Griffin I* court. The district court made no findings of fact concerning the plaintiffs'

estoppel theory in granting the plaintiffs' preliminary injunction. Of course, if the record permits only one resolution of the factual issue, then this court need not remand for further factual findings. *Pullman–Standard v. Swint,* 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982).

Two plaintiffs, Griffin and Lyle, testified in the 1991 evidentiary hearing, but not about reliance. Neither testified that statements or actions of general partners led them to believe that they had the right to vote. Griffin testified that "I'd like to have a voting interest" and that "I feel like I do, no question in my mind that I have a voting interest." This testimony says nothing about detrimental reliance upon the general partners' actions.

Plaintiffs have presented no plausible theory of waiver, and they have presented no substantial evidence of estoppel beyond that rejected by this court as insufficient in *Griffin I.* With the record facts, plaintiffs have no likelihood of success on the merits of their waiver or estoppel theories.

The preliminary injunction is VACATED and this case is REMANDED for further proceedings consistent with this opinion.