Ostler v. Codman                    CV-98-356-JD  04/20/99

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


David B. Ostler

        v.                              Civil No. 98-356-JD

The Codman Research Group, Inc.,
and S. Philip Caper


                            O R D E R


        Plaintiff, David B. Ostler, brings an action against his

former employer, The Codman Research Group, Inc., and Codman's

chief executive officer, S. Philip Caper, alleging claims arising

from a stock options agreement made during the course of Ostler's

employment.  The defendants move for judgment on the pleadings as

to four of Ostler's claims, and Ostler objects.  For the reasons

that follow, the defendants' motion (document no. 45) is denied

in part and granted in part.


                        Standard of Review

    "After the pleadings are closed but within such time as not

to delay the trial, any party may move for judgment on the

pleadings."  Fed. R. Civ. P. 12(c).  When considering a motion

for judgment on the pleadings, the "court must accept all of the

nonmoving part[ies'] well-pleaded factual averments as true and

draw all reasonable inferences in [their] favor."  Feliciano v.

Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998). Judgment on the pleadings is not appropriate "'unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)).

## Background[1]

The Codman Research Group ("CRG") was founded in 1984 by Philip Caper and John Wennberg and is in the business of developing and marketing decision-support software products and services for the healthcare market. Plaintiff Ostler joined CRG in 1985 as its chief financial officer. He became chief operating officer from 1986 to 1989, and president and chief executive officer from 1989 through 1993. Ostler left CRG in 1994. During the same time and continuing after Ostler left, defendant Caper served as CRG's director and de facto controlling shareholder.

---

[1]The background facts are taken from the amended complaint, filed on October 23, 1998, and the documents appended to it, in accord with the applicable standard of review. As such, the background facts do not constitute factual findings for purposes of the present motion or for any other purposes in the case.

2

Shortly after Ostler joined CRG, its co-founder John Wennberg left, and the buy-out of Wennberg's interest caused financial problems for the company. Ostler agreed to defer significant portions of his salary payment in exchange for stock options in the company. The stock options for deferred salary were referred to as "founders" options to distinguish them from "incentive" options that had already been given to Ostler. The parties agreed that Ostler's "founders" options were to be provided as an optional equity interest in the company on the same terms and for the same amounts as were awarded to Caper.

CRG issued the agreed options to Caper, Ostler, and certain other employees on July 28, 1988. When issued, the founders options had a token exercise price to defer income recognition for the recipients. The terms of the stock option agreement were set forth in CRG's 1988 Non-Qualified Stock Option Plan and an Option Grant to Ostler. Among other terms, the agreement provided that the options would terminate ten years later, on July 27, 1998, and that the shareholder and his professional advisors:

> have fully investigated the Company and the business and financial conditions concerning it and have knowledge of the Company's then current corporate activities and financial condition.

Option Grant to Ostler, p.2, ¶ 2. Upon exercise of the option,

3

CRG would deliver the shares to Ostler, which would cause a tax consequence of recognizing ordinary income. Ostler would have had to pay CRG in cash the amount necessary to cover the company's tax withholding unless the amount could be deducted from other payments due to him. Ostler would not be able to sell the shares to raise money for the tax liability until the company went public and the stock could be publicly traded.

In January of 1998, CRG's board amended the 1988 Non-Qualified Stock Option Plan to permit a shareholder who was then a "current highly compensated employee" to elect to defer delivery of option stock for up to five years. The amendment, by its terms, applied to Caper and but excluded Ostler. Ostler was not notified of the amendment. Caper exercised his 1988 options in January of 1998 and deferred delivery as allowed by the amendment.

When Ostler inquired in April of 1998, CRG advised him that if he exercised his options, it would most likely report the value of the transaction to the IRS at $26.50 per share. Ostler would have been unable to pay the tax obligation on the transaction at that value. Ostler sought information from CRG about the company's business and financial condition and what certification would be required from him in connection with exercising his options, but CRG produced only partial

4

information, delayed producing information, or failed to produce information until the exercise deadline had passed.

During July, the parties negotiated the terms and conditions for Ostler to exercise his options. CRG provided a new certification about the information and knowledge Ostler had pertaining to the company as a condition for exercising his options. Ostler believed the new certification violated the terms of the 1988 agreement and also required him to certify to untrue statements.

Before the expiration of 1988 agreement, Ostler brought suit and moved for a preliminary injunction to require CRG to amend the agreement to allow him to exercise his stock options with deferred delivery to avoid the unaffordable tax consequences of the transaction and to give him the opportunity to borrow the money necessary to cover the tax obligation as provided in the 1998 amendment. The magistrate judge held a hearing on the motion. On July 15, 1998, the magistrate judge recommended that Ostler's motion for a preliminary injunction be denied because Ostler had not demonstrated a likelihood of success on the merits of his breach of contract and breach of fiduciary duty claims, and none of the other relevant factors weighed heavily enough in Ostler's favor to overcome the deficiency in his likelihood of success.

5

CRG extended the option deadline under the 1988 agreement until July 31, 1998. On August 3, 1998, Ostler decided that he would exercise his options and asked CRG to extend the deadline for seven days. CRG refused.

Ostler filed an amended complaint in October of 1998 alleging claims of withholding information and imposition of an unlawful condition, breach of fiduciary duty, breach of contract, securities fraud, common law fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Ostler voluntarily dismissed his claims against the individual defendants, other than S. Philip Caper, and has recently voluntarily dismissed count two, his breach of fiduciary duty claim.

## Discussion

Defendants CRG and Caper move for judgment on the pleadings with respect to Ostler's claims of breach of contract, securities fraud, common law fraud, and RICO violations. Ostler concedes that one of his securities fraud claims is precluded by controlling law, but otherwise objects to the defendants' motion.

A. <u>Breach of Contract Claim</u>

Defendants assert that the magistrate judge's order denying Ostler's motion for a preliminary injunction bars Ostler's breach of contract claim as stated in his complaint. In particular, CRG relies on the court's interpretation of the parties' agreement that was contrary to Oster's claims under the agreement. Defendants argue that Ostler's breach of contract claim fails "because it is based upon an erroneous interpretation of the agreement that has already been rejected by the Court." In other words, CRG contends that the court's preliminary interpretation of the agreement establishes the meaning of the agreement for a determination on the merits of the breach of contract claim.

CRG's reliance on the preliminary injunction order is misplaced. "[A] court's conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes." <u>Narragansett Indian Tribe v. Guilbert</u>, 934 F.2d 4, 6 (1st Cir. 1991); <u>see also</u> <u>Griffin v. Box</u>, 910 F.2d 255, 263 (5th Cir. 1990). Due to the haste required in presenting and deciding issues for a preliminary injunction in most cases, including this one, the factual findings and legal conclusions made in the course of granting or denying a preliminary injunction are not binding as to the merits of the claim. <u>See</u> <u>University of Texas v. Camenisch</u>, 451 U.S.

7

390, 395 (1981); cf. Hawksbill Sea Turtle v. Federal Emergency Management Agency, 126 F.3d 461, 474 n.11 (3d Cir. 1997) (discussing preclusive effect of preliminary injunction orders).

CRG asserts only the preclusive effect of the preliminary ruling and does not ask the court to interpret the agreement for purposes of the present motion. On the limited grounds raised, CRG's motion for judgment on the pleadings with respect to count three is denied. For that reason, the court does not address Ostler's argument pertaining to a claim of breach of the covenant of good faith and fair dealing.[2]

## B.  Fraud Claims

Ostler brings securities fraud claims alleging violations of federal and state law. The defendants contend that the complaint does not state securities fraud claims under applicable statutes and that neither the statutory nor common law fraud claims are based on allegations that Ostler relied on misrepresentations or omissions by the defendants.

---

[2]The court notes, however, that Ostler's complaint does not seem to include a claim for breach of the covenant of good faith and fair dealing.

1. <u>Securities fraud claims</u>

Ostler alleges securities fraud claims as violations of "Section 10(b)(5) of the Securities Exchange Act, Section 17(b) of the Securities Act, and New Hampshire RSA 421-B:3 and B:25." Complaint, October 12, 1998, at 20. The defendants move to dismiss the section 17(b) and the New Hampshire statutory claims arguing that neither provides a cause of action in this case.

a. Section 17(b)

The defendants move to dismiss the section 17(b) based on the First Circuit's decision, in accord with decisions of several other circuits, that section 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a), does not imply a private cause of action. <u>See</u> <u>Maldonado v. Dominguez</u>, 137 F.3d 1, 7-8 (1st Cir. 1998). Relying on <u>Maldonado</u>, the defendants contend that no private right of action exists under section 17(b), 15 U.S.C.A. § 77q(b). Neither <u>Maldonado</u> nor any of the cases cited by the defendants address section 17(b). Ostler concedes, however, that the First Circuit's holding in <u>Maldonado</u> precludes his section 17(b) claim, and he "recognizes that this Court must follow <u>Maldonado</u> and dismiss that portion of Count IV which relies on Section 17(b), [although] he opposes such a ruling to preserve his appellate rights."

9

Because it appears that a private right of action is not implied by section 17(b) for the reasons discussed in Maldonado, and because the parties do not argue to the contrary, Ostler's claim in Count IV based on section 17(b) of the Securities Act of 1933, 15 U.S.C.A. § 77q(b), is dismissed.

b.  Claim under New Hampshire law.

The defendants argue that the New Hampshire securities fraud statutes relied on by Ostler do not apply to this case because no purchase or sale of a security is alleged.  See N.H. Rev. Stat. Ann. ("RSA") § 421-B:25, II (1998).  RSA 421-B:25, II provides a private cause of action against "[a]ny person who violates RSA 421-B:3 in connection with the purchase or sale of any security . . . ."  RSA 421-B:3 makes certain misrepresentations and fraudulent conduct unlawful if done "in connection with the offer, sale, or purchase of any security, directly or indirectly."

"Sale" is defined for purposes of chapter 421-B to include "every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value."  RSA 421-B:2, XIX(a).  "Offer" is defined to include "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value."  Id. at XIX(b).  The

10

defendants did not consider the definitions of the applicable statutory terms in moving to dismiss the statutory claims. It is plausible, based on the limited argumentation the defendants provide, that Ostler's allegations would constitute a claim for an attempt or offer to dispose of or an offer to buy a security or an interest in a security. Accordingly, defendants have not shown they are entitled to judgment on the pleadings as to the state statutory claim.

2. Particular allegations of fraud.

Relying again on the court's decision denying Ostler's motion for a preliminary injunction, the defendants argue that to the extent Ostler bases his statutory and common law fraud claims on allegations pertaining to the agreement between him and CRG, those claims must fail. The defendants contend that the court has held that the agreement between CRG and Ostler was fully performed in 1988 and that there was no continuing obligation to provide benefits to Ostler. As the court explained above, the ruling for purposes of denying the preliminary injunction was not a final decision on the merits of Ostler's contract claim, and

11

for the same reasons, that ruling does not affect his allegations pertaining to the agreement in support of his fraud claims.[3]

> 3.  <u>Reliance on the defendants' statements or omissions.</u>

The defendants assert that Ostler's fraud claims require proof that he relied on their misrepresentations or omissions.[4] See <u>Gross v. Summa Four, Inc.</u>, 93 F.3d 987, 992 (1st Cir. 1996) (reliance element of claim under section 10(b) of the Securities and Exchange Act of 1934); <u>Walker v. Percy</u>, 702 A.2d 313, 317 (N.H. 1997) (reasonable reliance an element of common law fraud). The defendants argue that Ostler's statements in his original and amended complaints contradict his allegation in his amended complaint that he relied on the defendants' statements and omissions in not exercising his stock options.

---

[3]In his objection, Ostler concedes that his statements about the parties' agreement and the January 1998 amendment are not actionable as statements of fact.  Ostler argues, however, that the same allegations are otherwise actionable under 15 U.S.C.A. § 78.  Because this seems to be a different issue than what was presented by the defendants, and because the defendants' argument does not require dismissing plaintiff's fraud claims, the court does not address Ostler's argument under section 78.

[4]The defendants offer no legal authority that RSA 421-B:25, II requires proof of reliance.  The reference to fraud in the statutory scheme includes more than common law fraud.  <u>See</u> RSA 421-B:3 and 421-B:2, VI.  <u>Cf.</u>  <u>Dinco v. Dylex Ltd.</u>, 111 F.3d 964, 967 (1st Cir. 1997) (providing separate elements of  RSA 421-B:3 and common law fraud).

Although statements of fact in a pleading are judicial admissions, once an amended complaint is filed, the original complaint is of no legal effect unless the original is specifically adopted or incorporated into the amended complaint. See Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1205 (7th Cir. 1998); Schott Motorcycle Supply Co. v. American Honda Co., 976 F.2d 58, 61 (1st Cir. 1992); Lowden v. William M. Mercer, Inc., 903 F. Supp. 212, 215 (D. Mass. 1995). Accordingly, statements made in Ostler's original complaint that are not included in the amended complaint cannot be considered in support of the defendants' motion. See Kelley, 135 F.3d at 1205.

Ostler's statements in his amended complaint, cited by the defendants to show lack of reliance, describe the information flow in July of 1998, with the exercise deadline looming at the end of the month. The cited statements allege the CRG failed to give Ostler complete information, and delayed giving him necessary information. The statements about the Coopers appraisal allege that it was provided at the very last minute and that it was preliminary rather than final.[5] Taken in the light

---

[5]The Coopers preliminary appraisal described in the complaint is not the kind of independent information that would make reliance on other information unreasonable. Cf. Kennedy v. Josephthal, 814 F.2d 798, 805 (1st Cir. 1987) (investment offering memorandum provided to investors found sufficient to make reliance on misrepresentations unreasonable).

13

most favorable to Ostler, these statements fail to establish that he did not rely on the information provided or that he was not mislead by omissions in making his decision about whether or not to exercise his options. Accordingly, the statements cited by the defendants do not so undermine Ostler's statement of reliance to require judgment in their favor on the fraud claims.

C. RICO Claim

Ostler's RICO claim is brought against defendant Caper alone and incorporates all of the allegations made in support of his other claims, including his securities fraud claims. As Caper contends, the RICO statute providing a private cause of action excludes "any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C.A. § 1964(c) (Supp. 1999).

Ostler argues that his RICO claims allege mail and wire fraud as predicate acts and, therefore, are not excluded by section 1964(c). Congress excluded securities fraud claims from RICO liability as part of a comprehensive amendment of the securities fraud laws in the Private Securities Litigation Reform Act. See Pub.L. No. 104-67, 109 Stat. 737 (1995); see also Mathews v. Kidder, Peabody & Co., 161 F.3d 156, 164 (3d Cir. 1998). Congressional intent in amending section 1964(c) has been

14

interpreted to extend to the exclusion of RICO claims alleging predicate acts of mail and wire fraud if those acts are based on conduct that would be actionable as securities fraud.  See Krear v. Malek, 961 F. Supp. 1065, 1074 (E.D. Mich. 1997); ABF Capital Management v. Askin Capital Management, Inc., 957 F. Supp. 1308, 1319 (S.D.N.Y. 1997).

The court finds the reasoning in the Krear and ABF Capital cases persuasive.  Ostler's plea to save his RICO claims at least until it is clear that his securities fraud claims will survive ignores the purpose of section 1964(c)'s exclusion of such claims.  He has alleged securities fraud based on the same acts that he alleges constitute predicate acts for his RICO claims.  That he characterizes some of the conduct for purposes of the RICO claims as mail or wire fraud does not change his allegations that the same conduct is securities fraud.  Accordingly, based on the exclusion in section 1964(c), Ostler's RICO claim must be dismissed.

## Conclusion

For the foregoing reasons, the defendants' motion for judgment on the pleadings (document no. 45) is denied as to Ostler's claims of breach of contract (Count III), securities fraud based on section 10(b) and RSA 421-B (Count IV), and common

15

law fraud (Count V).  The defendants' motion is granted as to

Ostler's claims of securities fraud based on section 17(b) (Count

IV) and violation of RICO (Count VI).  Therefore, Count VI is

dismissed, and the claim based on section 17(b) in Count IV is

dismissed.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

April 20, 1999

cc:  William Edward Whittington IV, Esquire
     Bruce E. Falby, Esquire
     H. Jonathan Meyer, Esquire

16