United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 10, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-50413
_____

MICHAEL JOSEPH FUHRMAN,

                                        Petitioner - Appellee,

                        versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

                                        Respondent - Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

Before JOLLY, BEAM,[1] and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The Texas Department of Criminal Justice ("TDCJ") appeals the

district court's grant of Michael Joseph Fuhrman's Petition for

Writ of Habeas Corpus, which alleged that Fuhrman was being held in

custody in contravention of Texas's DNA Statute. The TDCJ contends

that the district court's grant is barred by the law of the case

doctrine and the mandate rule. Furthermore, the district court

erred by failing to defer to the state's reasonable interpretation

of the statute at issue. Because we agree that the grant of habeas

_____

[1] Circuit Judge for the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

corpus relief was error, we reverse and render judgment for the TDCJ.

I

Michael Joseph Fuhrman pled guilty to the felony of burglary of a building with intent to commit theft. On November 16, 1989, Fuhrman was sentenced to fifteen years of imprisonment in the TDCJ by the 263rd Judicial District Court of Harris County, Texas.[2] No direct appeal was taken.

In 1995, Texas enacted its DNA testing statute. See TEX. GOV'T CODE ANN. § 411.148 (1996). The statute provided that the TDCJ was to take DNA specimens from inmates who had been convicted of certain crimes, including those convicted of burglary of a habitation with intent to commit a felony other than theft. TEX. GOV'T CODE ANN. § 411.148(a) (1996); TEX. PENAL CODE ANN. § 30.02(d) (2003). The relevant section of the statute was amended in 1999 to include second degree burglary of a habitation as a qualifying offense. TEX. GOV'T CODE ANN. § 411.148(a) (1999); TEX. PENAL CODE ANN. § 30.02(c)(2) (2003).

On September 6, 2000, the TDCJ first attempted to take Fuhrman's DNA sample. Fuhrman refused to comply. The TDCJ cited as the qualifying offense a 1968 Georgia conviction of burglary of a habitation to which Fuhrman had admitted on his travel card. As

_____

[2] The district court incorrectly stated that Fuhrman was sentenced on November 16, 1999. 1989 is the correct year of sentencing.

2

a result of his refusal, and after disciplinary proceedings, Fuhrman was punished by revoking his good-time credits. This revocation changed Fuhrman's projected mandatory supervised release date. This pattern between Fuhrman and the TDCJ repeated itself over and over again. Fuhrman filed an application for a writ of habeas corpus, which was denied by the Texas Court of Criminal Appeals without written order on March 21, 2001. Fuhrman filed second and third applications, which were ultimately denied by the Texas Court of Criminal Appeals respectively, on February 6, 2002 without written order, and on April 6, 2005 without written order on the findings of the trial court without a hearing.

## II

On May 11, 2001, Fuhrman filed an Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Texas, which ordered it transferred to the United States District Court for the Western District of Texas on May 16, 2001. Fuhrman raised ten claims. On January 10, 2003, the district court denied Fuhrman's federal Application, stating that his claims all lacked merit.

Fuhrman sought a certificate of appealability ("COA") from this court. On July 11, 2003, this court granted Fuhrman a COA on certain issues, vacated the district court's judgment, and remanded "for a definitive finding whether Fuhrman lost good-time credits in any disciplinary cases other than # 20010015552 for refusing to submit a DNA specimen." Fuhrman v. Cockrell, 79 F. App'x 614, 615

3

(5th Cir. 2003).  We instructed that if the district court should find that Fuhrman had lost such good-time credits, the district court should

> order the Respondent to brief the issues (1) whether Furhman [sic] is eligible for release to mandatory supervision and (2) whether his forfeiture of good-time credits contravenes § 411.148(d)'s provision that '[a]n inmate may not be held past a statutory release date if the inmate fails or refuses to provide a blood sample,' and, if so, whether there are constitutional implications necessitating habeas relief.

Id.  This court additionally held that "there is no indication that the Georgia offense of burglary of a habitation was not a DNA eligible offense, given that it involved conduct punishable under Texas Penal Code § 30.02(c)(2), which provides that the crime of burglary is a 'felony of the second degree if committed in a habitation.'" Id. (quoting TEX. PENAL CODE ANN. § 30.02(c)(2) (Vernon 2002)).

After our remand, the district court issued its Reply to Remand Order Granting Movant 28 U.S.C. § 2254 Relief and a Final Judgment granting relief on January 13, 2005.  The court held that Fuhrman lost a total of 1308 good-time credits solely based on his refusal to submit to DNA testing.  The court further held that Fuhrman was eligible for mandatory supervised release, and that the TDCJ was in violation of TEX. GOV'T CODE ANN. § 411.148(d), which forbids holding a prisoner past his statutory release date for failure to submit to DNA testing.  Last, the district court ruled

4

that Fuhrman's Georgia burglary conviction did not, absent more, place him within the scope of Texas's DNA statute.

The TDCJ filed a Rule 59(e) Motion to Alter or Amend the Judgment, contending that Fuhrman is subject to the Texas DNA statute. The TDCJ further argued that forfeiting Fuhrman's good-time credits did not implicate due process rights because the term "statutory release date," as used in § 411.148(d), did not equate to a mandatory supervised release date. On February 10, 2005, the district court denied the motion, finding that the Georgia burglary conviction (the conviction relied on by the state) did not make Fuhrman eligible for DNA testing, and that "statutory release date" means "the date at which an inmate can be released taking into account his good time credits."

The TDCJ timely appeals the Final Judgment and the Order Denying Respondent's Emergency Motion Under Rule 59(e).

III

A

The TDCJ argues that the district court failed to properly respect the law of the case doctrine and the mandate rule when it decided that Fuhrman's Georgia conviction was not a qualifying offense for purposes of the Texas DNA statute. We agree.

The law of the case doctrine provides that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." United States v. Becerra, 155 F.3d 740, 752 (5th Cir. 1998)

5

(quoting Ill. Cent. Gulf R.R. v. Int'l Paper Co., 889 F.2d 536, 539 (5th Cir. 1989)).  Exceptions to the law of the case doctrine allow reexamination only if "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice."  Becerra, 155 F.3d at 752-53 (quoting N. Miss. Commc'ns, Inc. v. Jones, 951 F.2d 652, 656 (5th Cir. 1992)).  The principles surrounding the law of the case doctrine "apply equally to the mandate rule, 'which is but a specific application of the general doctrine of law of the case.'" United States v. Lee, 358 F.3d 315, 321 (5th Cir. 2004).  "Absent exceptional circumstances, the mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."  Id.; see also Becerra, 155 F.3d at 753 (The mandate rule is a corollary of the law of the case doctrine providing "that a lower court on remand must 'implement both the letter and the spirit of the [appellate court's] mandate,' and may not disregard the 'explicit directives' of that court." (alteration in original) (quoting Johnson v. Uncle Ben's, Inc., 965 F.2d 1363, 1370 (5th Cir. 1992)).  The "district court is not free to deviate from the appellate court's mandate."  Becerra, 155 F.3d at 753 (quoting Barber v. Int'l Bhd. of Boilermakers, 841 F.2d 1067, 1070 (11th Cir. 1988)).  The district

6

court may only deviate from the mandate if one of the exceptions to the law of the case doctrine applies. Becerra, 155 F.3d at 753.

This court mandated that the district court examine limited specific issues, none of which involved a determination regarding the Georgia conviction. We remanded "for a definitive finding whether Fuhrman lost good-time credits in any disciplinary cases other than # 20010015552 for refusing to submit a DNA specimen." Fuhrman, 79 F. App'x at 615. We further directed that should the district court find that Fuhrman had lost certain good-time credits, the district court should

> order the Respondent to brief the issues (1) whether Furhman [sic] is eligible for release to mandatory supervision and (2) whether his forfeiture of good-time credits contravenes § 411.148(d)'s provision that "[a]n inmate may not be held past a statutory release date if the inmate fails or refuses to provide a blood sample," and, if so, whether there are constitutional implications necessitating habeas relief.

Id. Further, this court stated that "there is no indication that the Georgia offense of burglary of a habitation was not a DNA-eligible offense, given that it involved conduct punishable under Texas Penal Code § 30.02(c)(2), which provides that the crime of burglary is a 'felony of the second degree if committed in a habitation.'" Id. Thus, the district court's determination that Fuhrman's Georgia conviction was not a DNA-eligible offense was clearly a deviation from the specifics of this court's mandate, and

7

it also improperly reexamined an issue decided by this court, contravening the law of the case doctrine.

Thus, we must determine if an exception exists that would allow the district court to take this detour and decide the issue. Fuhrman does not point us to any new evidence adduced by the district court in finding that the Georgia conviction was not a DNA-eligible conviction, and we otherwise find no indication that new evidence regarding the Georgia conviction was adduced on remand. Therefore, the first exception to the law of the case doctrine and the mandate rule is not met. Similarly, Fuhrman does not direct us to, nor are we able to find, any intervening change of law by a controlling authority that would warrant the determination by the district court that the Georgia conviction was not a DNA-eligible offense.

Last, we must determine whether the earlier decision by this court was clearly erroneous and would work a manifest injustice. The Texas DNA statute was amended in 1999 to include second degree burglary of a habitation as a qualifying offense. TEX. GOV'T CODE ANN. § 411.148(a) (1999);[3] TEX. PENAL CODE ANN. § 30.02(c)(2) (2003).[4]

---

[3] The statute was amended to state:

> (a) An inmate of the institutional division or other penal institution shall provide one or more blood samples or other specimens taken by or at the request of the institutional division for the purpose of creating a DNA record if the inmate is ordered by a court to give the sample or specimen or is serving a sentence for:

8

(1) an offense:

...

(B) under Section 30.02, Penal Code (burglary), if the offense is punishable under Subsection (c)(2) or (d) of that section;

...

(2) any offense if the inmate has previously been convicted of or adjudicated as having engaged in:

(A) an offense described in Subsection (a)(1); or

(B) an offense under federal law or laws of another state that involves the same conduct as an offense described by Subsection (a)(1).

TEX. GOV'T CODE ANN. § 411.148(a) (1999).

We also note that as it currently reads, the law applies to any "inmate serving a sentence for a felony." TEX. GOV'T CODE ANN. § 411.148(a) (2005).

[4] The relevant Texas burglary statute states:

(a) A person commits an offense if, without the effective consent of the owner, the person:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or
(2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

(b) For purposes of this section, "enter" means to intrude:

Fuhrman apparently admitted to the Georgia conviction for burglary of a habitation on a travel card he filled out with the TDCJ. Furthermore, § 411.148(a) covers "an offense under federal law or laws of another state that *involves the same conduct* as an offense described by Subsection (a)(1)." TEX. GOV'T CODE ANN. § 411.148(a) (1999) (emphasis added). Fuhrman argues that because his sentence in Georgia was apparently limited to six months of probation, and under the Georgia law of burglary, the minimum sentence for a first offense for burglary was one year, his sentence was punishment for

---

> (1) any part of the body; or
>
> (2) any physical object connected with the body.
>
> (c) Except as provided in Subsection (d), an offense under this section is a:
>
> (1) state jail felony if committed in a building other than a habitation; or
>
> (2) felony of the second degree if committed in a habitation.
>
> (d) An offense under this section is a felony of the first degree if:
>
> (1) the premises are a habitation; and
>
> (2) any party to the offense entered the habitation with intent to commit a felony other than felony theft or committed or attempted to commit a felony other than felony theft.

TEX. PENAL CODE ANN. § 30.02 (2003).

10

a misdemeanor. The Texas statute defines the relevant burglary offense as a second degree felony; thus Fuhrman argues that his punishment cannot be compared to the Texas burglary felony. Although Fuhrman's argument seems logical, the relevant language in the statute sheds light. The statute makes reference to offenses that involve the same conduct, i.e. burglary of a habitation, and *not* to offenses that involve the same punishment. Because burglary of a habitation, whether sentenced as a misdemeanor or a felony, involves the same relevant conduct, it is reasonable to interpret § 411.148(a) as including Fuhrman's Georgia conviction. Thus, this court did not plainly err in its holding that the Georgia conviction was a DNA-eligible offense. Because this holding was not clear error, the last exception to the law of the case doctrine does not apply.

Therefore, the district court was not permitted to determine that the Georgia conviction was not a DNA-eligible conviction, and it erred in doing so, as its holding runs afoul of both the law of the case doctrine and the mandate rule. Fuhrman's Georgia conviction rendered him eligible for DNA sampling.

B

The TDCJ next argues that the district court erred in failing to defer to the state's interpretation of the Texas DNA statute. Specifically, the TDCJ argues that the district court should have deferred to the Director's interpretation of "statutory release

11

date." Section 411.148(d) states that "[a]n inmate may not be held past a statutory release date if the inmate fails or refuses to provide a blood sample or other specimen under this section." Tᴇx. Gᴏᴠ'ᴛ Cᴏᴅᴇ Aɴɴ. § 411.148(d) (1999). It goes on to provide that "[a] penal institution may take other lawful administrative action against the inmate." Id. The district court, in interpreting these two sentences in conjunction, found that

> the legislature ... allowed for [the TDCJ] to take other measures short of perpetual incarceration against an imnate who failed to comply with a request for DNA. [The TDCJ] has other administrative avenues it did and may continue to pursue against inmates who do not comply with DNA testing. None of these other administrative actions impinge upon [Fuhrman's] due process rights as clearly as does the loss of good-time credits, especially in light of the language of the statute which *expressly forbids the type of action taken by the TDCJ in this case*. As demonstrated in this case, the TDCJ also restricted [Fuhrman's] recreation, commissary and visitation privileges in reaction to his refusal to submit to DNA testing. None of those restrictions are expressly forbidden by the language of § 411.148(d), which does not allow for actions which retain an inmate past his statutory release date as punishment.

(emphasis added). This statement in essence excoriates the TDCJ for keeping Fuhrman past his projected mandatory supervised release date, thus interpreting "statutory release date" in § 411.148(d) to include "projected mandatory supervised release date." Further, the district court stated that "statutory release date" means "the date at which an inmate can be released taking into account his

12

good time credits."  Fuhrman argues that "statutory release date" includes "projected mandatory supervised release date," and as he was kept past his projected mandatory supervised release date, he was kept in custody in contravention of the mandate of the Texas DNA statute, and thus his due process rights were violated.

In its Administrative Directive 3.17, the TDCJ consistently and continuously interprets § 411.148(d) in a manner inconsistent with the district court's opinion.  The TDCJ contemplates the taking of good time credits as a sanction for refusal to submit to DNA sampling, and further contemplates, and even encourages, the pushing back of supervised release and parole dates, as a consequence of refusing to cooperate in DNA sampling.[5]  This record

---

[5] Tex. Dep't of Criminal Justice, Administrative Directive 03.17, Policy (Sept. 1, 1999) ("Although an offender may not be held past a non-discretionary mandatory supervision or discharge date, the law provides for the use of administrative action against an offender who fails or refuses to comply."); id. at III.A.3 ("The purpose of pursuing disciplinary action is to prevent the parole or mandatory release of an offender who refuses to give a sample."); id. at III.A.4 ("An offender who has been reduced in time-earning status for refusal to provide a DNA specimen shall not be eligible for promotion in time-earning status for as long as the offender refuses to comply."); id. at III.B (Force shall be used "to take a blood sample prior to the release of an offender who refuses to give the sample, provided however, that all administrative sanctions have been taken to include the loss of all good time if the offender is scheduled for release on parole or mandatory supervision."); Tex. Dep't of Criminal Justice, Administrative Directive 03.17 (rev. 1), Policy, III.A.3, III.A.4, III.B (Feb. 1, 2000), superseding AD-03.17 Sept. 1, 1999 (same as 03.17 from September 1, 1999); Tex. Dep't of Criminal Justice, Administrative Directive 03.17 (rev. 2), IV.A.4 (July 19, 2002), superseding AD-03.17 (rev. 1) Feb. 1, 2000 (same statement as previous III.A.3); id. at IV.A.5 ("An offender who has been reduced in time-earning status and refuses to provide a DNA specimen shall not be eligible for promotion in time-earning status for as long as the offender

13

of conduct clearly indicates that the Director interprets the term "statutory release date" in § 411.148(d) narrowly, *not* including within the definition "projected mandatory supervision release date." According to this wholly plausible interpretation by the Director, the disciplinary proceedings against correctly found against Fuhrman, and the state trial court and Texas Court of Criminal Appeals were correct in denying his applications for writ of habeas corpus.[6]

refuses to comply."); id. at IV.B (Force shall be used "to take a blood sample prior to the release of an offender who refuses to give the sample, provided all administrative sanctions have been taken including the loss of all good time if the offender is scheduled for release on parole or mandatory supervision." Further, "[i]t is imperative that all units processing offenders who are required to submit a DNA specimen take all necessary steps to secure the sample, i.e., loss of good time and reduction in class, prior to the offender's release."); Tex. Dep't of Criminal Justice Administrative Directive 03.17, V.A.4 (rev. 3) (Apr. 1, 2004), superseding AD-03.17 (rev. 2) July 19, 2002 (same statement as previous IV.A.4); id. at V.A.5 (same statement as previous IV.A.5); id. at V.B ("All administrative sanctions shall be taken including loss of all good time if the offender is scheduled for release on parole or mandatory supervision. Force shall not be used until all graduated sanctions have been taken." Further, "[i]t is imperative that all units processing offenders who are required to submit a DNA specimen take all steps necessary to secure the sample, i.e., loss of good time and reduction in class, prior to the offender's release.").

[6] We also note that the law has been amended, and currently provides that:

> An inmate may not be held past the inmate's statutory release date if the inmate fails or refuses to provide a blood sample or other specimen under this section. A penal institution may take lawful administrative action, including disciplinary action resulting in the loss of good conduct time, against an inmate who refuses to provide a

14

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996). Fuhrman raised the issue in his state habeas proceedings that he believed the TDCJ violated his due process rights when the TDCJ held him past his original projected mandatory supervised release date, after taking away his good time credits through disciplinary proceedings. Implicit in the trial court's and the Texas Court of Criminal Appeals' denial of Fuhrman's state applications was an agreement with or acceptance of the TDCJ's interpretation of the statute -- implicit was the determination that the statutory term "statutory release date" does

---

> blood sample or other specimen under this section. ... In Subsection (d) ..., "statutory release date" means the date on which an inmate is discharged from the inmate's controlling sentence.

TEX. GOV'T CODE ANN. § 411.148(d)-(e) (2005).

15

not include "projected mandatory supervised release date." Otherwise, the Texas Court of Criminal Appeals would have been bound to hold that Fuhrman was being held in contravention of the Texas DNA statute. See Young v. Dretke, 356 F.3d 616, 628 (5th Cir. 2004) ("[I]n our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law. Accordingly, AEDPA requires that we defer to [an] implicit conclusion and interpretation of state law by the state habeas court."). Thus, we defer to this implicit holding made by the state habeas court in interpreting state law that "statutory release date" does not encompass "projected mandatory supervised release date." Accordingly, the district court erred when it failed to defer to such interpretation. Because "projected mandatory supervised release date" is not included in the term "statutory release date," Fuhrman was and is not held in contravention of the law, especially in light of our determination that he is eligible for DNA sampling under the Texas DNA statute. Thus, due process is not violated.

Further, Fuhrman does not allege that his disciplinary proceedings contravened the due process requirements set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). Therefore, Furhman was not denied due process, and the district court erred insofar as it held that holding him in custody violated due process.

IV

16

For the foregoing reasons, the judgment of the district court is REVERSED, and judgment is RENDERED for the Respondent.