IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00321-CR

 

Desi Villarreal,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 372nd District Court

Tarrant County, Texas

Trial Court No. 1032417R

 



O p i n i o n



 

A jury found Desi Villarreal guilty of aggravated
sexual assault and the trial judge sentenced him to sixty years in prison. 
Villarreal asserts two issues on appeal: (1) that the trial court erred in
denying his motion to suppress DNA evidence; and (2) that the record contains
legally insufficient evidence to support the deadly weapon finding.  We will
affirm.




Background

On September 17, 1998, an intruder entered the
residence of K.C., her daughter P.Y., and P.Y.’s minor daughter.  According to P.Y.,
the intruder, who had a knife, entered the bedroom where she and her daughter
were sleeping and threatened to kill P.Y.’s daughter, if P.Y. refused to have
sex with him.  He then sexually assaulted P.Y. while they were in bed.  The
intruder then tied up P.Y. and K.C. and made them hop downstairs to get money
from their vehicle.  P.Y. was then sexually assaulted again in the living
room.  After drinking juice from the refrigerator, the intruder left in P.Y.s’
car, threatening that if the police became involved, he would kill the whole
family.

P.Y. went next door to a neighbor’s house, called
the police, and was taken to the hospital to be examined.  The treating
physician noted that P.Y. had taken a shower before coming to the hospital, and
he was unable to find any external sperm but vaginal swabs were taken and
sealed in a rape-kit.

During the trial for the 1998 offense, Virginia
Hunter testified that with the exception of P.Y.’s rape kit, all of the
evidence, photographs, witness statements, and the like were destroyed in error
by the Grand Prairie Police Department.

CODIS

Title 4, Subtitle B, Chapter 411, Subchapter G of
the Government Code establishes a “DNA Database System” for Texas.  Tex. Gov’t Code Ann. §§ 411.148-.154 (Vernon Supp. 2007).  Section 411.148 requires that the Texas Department of Criminal Justice
(TDCJ) collect a sample from every individual confined in a penal institution under
its auspices.  Id. § 411.148.  Each sample is analyzed and the record is
placed in the CODIS[1] DNA
database.  Id. §§ 411.142(g)(1), 411.146.

On September 29, 2000, Villarreal was convicted of
the offense of attempted kidnapping in Bexar County and received a sentence of
eight years; while incarcerated, TDCJ obtained a DNA sample to be used in the
CODIS database. [2]

DNA Evidence

In January 2005, the Department of Public Safety,
CODIS Division, in an effort to identify P.Y.’s assailant, matched the DNA from
the blood sample given by Villarreal in 2001 to the DNA from the 1998 offense
involving P.Y.  Because of the match, the Grand Prairie Police Department
obtained a search warrant for a saliva sample from Villarreal.  Along with providing
a “buccal swab,” Villarreal submitted a written statement in which he admitted
to having sexual relations with P.Y., but he claimed that it was consensual and
no weapon was involved.

Prior to trial, Villarreal filed a motion to suppress
evidence of the 2001 DNA sample on the basis that the sample was taken pursuant
to a conviction that was not a “qualifying offense” under a prior version of section
411.148.  The court overruled the motion to suppress and found an error in the
paperwork to be administrative rather than constitutional.

In his first issue, Villarreal asserts that the
trial court erred in admitting the DNA evidence.  According to Villarreal, the
sample was impermissibly obtained, and he states two reasons:  first, the TDCJ
paperwork authorizing the seizure of his blood under section 411.148 stated an
unauthorized reason.  Second, he points to a federal appellate court decision
that struck down a trial court’s determination that a conviction from another
state is not a DNA-eligible conviction.  Fuhrman v. Dretke, 442 F.3d 893
(5th Cir. 2006).

We review a trial court’s ruling on a motion to
suppress under a bifurcated standard of review.  Carmouche v. State, 10
S.W.3d 323, 327-28 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d
85, 89-90 (Tex. Crim. App. 1997).  When the facts are undisputed, as the
relevant facts are here, and we are presented with a pure question of law, de
novo review is proper.  Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App.
1999).  

We will apply Subchapter G as it existed at the
time of trial, August 30, 2006.  The amending act in 2005 provides that
amendments then made apply to DNA tests offered into evidence after the
effective date of the amendments and to individuals confined in a TDCJ
institution on or after the effective date.  Acts 2005, 79th Leg., ch. 1224, § 22,
eff. Sept. 1, 2005.  The circumstances of this case meet both tests.  The
amending act further requires that the Department collect samples from all
persons then confined for a felony “from whom a DNA sample was not required”
before its effective date.  Id.  We thus reject both reasons proffered
by Villarreal.  Since at least September 1, 2005, Section 411.148 has required that
all prison inmates provide blood samples or other specimens to be included in
the CODIS DNA database.[3]  Tex. Gov’t Code Ann. § 411.148(a)(1)(B),
(b).  As of the date the DNA results were offered into evidence, Villarreal had
been confined in a TDCJ facility for almost a year after the effective date of
the amended act, during which time the statute imposed a mandatory duty on the
Department to collect a sample for the DNA database.  Because the Department already
had a sample from Villarreal, the requirement of the statute was met.[4]

We overrule Villarreal’s first issue.  

Sufficiency of the Evidence of a Deadly Weapon

Villarreal argues that the evidence was legally
insufficient to show that he used a deadly weapon.  To support his second
issue, Villarreal argues that, in his statement given to police, he repeatedly
denied using a weapon.  He also claims that the alleged knife was never found,
that P.Y. was the only witness to testify concerning the presence of a knife,
and that P.Y. sustained no knife injuries.

When reviewing a challenge to the legal
sufficiency of the evidence to establish the elements of a penal offense, we
must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  In doing so, any inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The State need not produce an alleged knife at
trial to obtain a deadly weapon finding.  Morales v. State, 633 S.W.2d
866, 868 (Tex. Crim. App. [Panel Op.] 1982); Nickerson v. State, 69
S.W.3d 661, 669 (Tex. App.—Waco 2002, pet. ref'd).  A deadly weapon finding may
be made, if otherwise supported by the evidence, regardless of whether any
injury was inflicted.  See McCain v. State, 22 S.W.3d 497, 503 (Tex.
Crim. App. 2000); Rogers v. State, 877 S.W.2d 498, 500 (Tex. App.—Fort
Worth 1994, pet. ref'd).  We examine the following factors to determine whether
the evidence supports a finding that a knife is a deadly weapon: (1) the size,
shape, and sharpness of the knife; (2) the manner of its use or intended use;
(3) the nature or existence of inflicted wounds; and (4) any testimony of the
knife's life-threatening capabilities.  Nickerson, 69 S.W.3d at 670; Garcia
v. State, 17 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); accord
Thomas v. State, 821 S.W.2d 616, 619 (Tex. Crim. App. 1991).

P.Y. testified extensively about Villarreal’s use
of a knife.  She testified that when she was in the bedroom, she could not
initially see the knife, but she felt it on her back as Villarreal raped her.  The
treating physician corroborated this evidence when he testified that he found a
small “fresh” scratch on P.Y.’s back when he performed the sexual assault exam.

P.Y. testified that the knife’s blade was
approximately six to eight inches in length and that Villarreal held the knife
to her daughter’s neck and threatened to kill her.  She also testified that
Villarreal bound her legs and feet using plastic zip ties, forced her to hop
down the stairs, and later used the knife to cut the plastic straps so that he
could rape her again in the living room.  P.Y. also claims that, while holding
the knife, Villarreal repeatedly told her that he would kill her and her family
if they reported the incident to the police.

Viewing all the evidence in a light most favorable
to the verdict, the jury as a rational trier of fact could have found that
Villarreal used a deadly weapon in the commission of the crime.  Tex. Pen. Code Ann. § 1.07(a)(17)(B)
(Vernon 2003); McCain, 22 S.W.3d at 503.  In summary, the evidence is
legally sufficient to support the jury’s deadly weapon finding.  We overrule
Villarreal’s second issue.




Conclusion

Having overruled Villarreal’s two issues, we
affirm the trial court's judgment.

 

BILL VANCE

Justice

 

 

 

Before Chief Justice
Gray,

            Justice
Vance, and

            Justice Reyna

Affirmed 

Opinion delivered and
filed February 27, 2008

Publish 

[CRPM]









[1] CODIS refers to the Combined DNA Index System
that is jointly maintained by the Federal Bureau of Investigation and various
state and local agencies.  Tex. Gov’t
Code Ann. § 411.141(1) (Vernon Supp. 2007).

 





[2]  Villarreal’s other criminal history is
noteworthy because of the argument he makes.  On December 22, 1992, he was
convicted of first-degree burglary and assault and battery with a dangerous
weapon in Tulsa, Oklahoma.  He received a sentence of seven years on the
burglary charge and five years on the assault and battery charge.  





[3]  A 2001 amendment to the statute appears to
impose the same requirement on inmates serving felony sentences in TDCJ.  Acts
2001, 77th Leg., R.S., ch. 1509, § 1.





 

[4]  Thus, whether any of
Villarreal’s prior convictions qualified for mandatory sampling under the prior
version of the statute is immaterial.  Nevertheless, even if we applied the
prior version, the Oklahoma offense for burglary of a habitation, which involved
the same conduct proscribed by Penal Code section 30.02, was a “qualifying
offense” that authorized TDCJ to collect a sample for the DNA database.  See
Fuhrman v. Dretke, 442 F.3d 893 (5th Cir. 2006) (5th Circuit Court of
Appeals held that it was error for the federal district court to rule that
Fuhrman’s Georgia burglary conviction did not require his DNA to be taken under
the prior version of section 411.148.).  Furthermore, were we to consider the
facial discrepancy on the TDCJ paperwork, i.e., listing the wrong
offense, we would find that the offense listed by the Department employees on
the form is irrelevant because under either version of the statute, the taking
of the sample was mandatory.