**GENE AND GENE, LLC**

v.

**BIOPAY, LLC., et. al.**

**Civil Action No. 05–121–JJB.**

United States District Court,
M.D. Louisiana.

Nov. 10, 2009.

Philip Bohrer, Bohrer Law Firm, Christopher K. Jones, John P. Wolff, III, Keogh, Cox & Wilson, Ltd., Keith D. Jones, Baton Rouge, LA, for Gene and Gene, LLC.

David B. Sharpe, Miles C. Thomas, Scott Rodgers Wheaton, Jr., Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for BioPay, LLC.

Andre' Collins Gaudin, Meredith M. Miceli, Burglass & Tankersley, L.L.C., Metairie, LA, for BioPay, LLC, Essex Insurance Company.

Sidney W. Degan, III, Keith Alex Kornman, Travis Louis Bourgeois, Degan, Blanchard & Nash, New Orleans, LA, for Evanston Insurance Company.

### RULING ON MOTIONS TO RE-CERTIFY CLASS AND SANCTIONS

JAMES J. BRADY, District Judge.

This matter is before the Court on Plaintiff's motion to re-certify a class (doc. 193) and Plaintiff's motion for sanctions (doc. 189). Plaintiff, Gene and Gene, LLC ("Gene"), filed supplemental memorandums regarding both motions (docs. 193 & 231) and Defendant, BioPay, LLC ("BioPay"), filed oppositions to both motions (docs. 232 & 233). Defendant

Essex Insurance Company also filed oppositions to both motions (docs. 234 & 235).[1] Plaintiff then filed a motion (doc. 236) for leave to file a reply in support of its motion to re-certify a class, which the Court denied (doc. 238). The Court held oral arguments on October 27, 2009. For the following reasons, the Court GRANTS Plaintiff's motion to re-certify, and DENIES Plaintiff's motion for sanctions.

*Background*

Gene filed suit against BioPay under the Telephone Consumer Protection Act of 1991 ("TCPA"), alleging that BioPay sent unsolicited advertisements to facsimile machines. *See* 47 U.S.C. § 227(b)(1)(C). Under the TCPA, a litigant may seek an injunction and/or the greater of actual monetary loss for each violation or $500 in damages for each violation; in addition, the Court may award treble damages upon a finding that a defendant acted willfully or knowingly in violation of the TCPA. *Id.*

Gene alleges that BioPay engaged in an advertising strategy known as "fax blasting," whereby BioPay simultaneously transmitted facsimiles to several different recipients. As such, Gene seeks to represent a class of plaintiffs targeted by BioPay. Previously, on December 20, 2006, the Court granted Gene's original motion for class certification. The Fifth Circuit, however, reversed the Court's class certification, finding class certification improper because questions of law or fact common to class members did not predominate over questions affecting only individual members. *Gene and Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 325–26 (5th Cir.2008). Rather, the Fifth Circuit found that "given the particular facts of this case," the issue of consent could not be established through class-wide proof. *Id.* at 329.

Upon remand, the Court allowed Gene to conduct further discovery. During that discovery, BioPay produced a searchable electronic database of its contacts (the "Database"), thereby substantially changing the particular facts of this case. In the Database, BioPay recorded the source of each contact, whether that contact gave permission to receive a fax, and any sales notes regarding conversations between BioPay and the contact.

The Database serves as the basis for both motions before the Court. First, using the Database, Gene now asks the Court to certify a new class consisting of contacts BioPay obtained from four purchased lists,[2] which do not have the "Fax Permission" box checked, and which have no comments in the "Sales Notes" field predating the sending of a facsimile.[3] Simply stated, the class consists entirely of contacts that BioPay obtained from purchased lists, but only includes those contacts that BioPay has no record of communicating with before transmitting a facsimile advertisement. Second, because BioPay did not initially produce the Database, but produced it after roughly three years of litigation, including expensive appellate litigation, Gene moves for sanctions.

*Analysis*

**I. Class Certification**

A litigant seeking class certification must fulfill four threshold requirements: numerosity, commonality, typicality, and adequacy of representation. Fed.R.Civ.P. 23(a). Because Gene seeks class certification under Rule 23(b)(3), it must also establish that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is the supe-

---

1. Because Essex Insurance Company adopted BioPay's arguments without providing any additional arguments, the Court out of simplicity will refer only to BioPay.

2. BioPay argues that Gene included twenty-five contacts that did not come from one of the purchased lists, but came from sources identified as "Cold Call" and "Las Vegas Mailing List." Because these contacts do not fit the class definition, they will be excluded.

3. Gene's motion records the class as excluding any contacts for which the Database reflects comments in the "Sales Notes" field; however, at oral arguments, Gene modified its class to exclude only those contacts for which comments appeared in the "Sales Notes" field before the recorded date of facsimile transmission. Notes appearing after transmission, Gene reasons, are irrelevant as to the inquiry of whether the contact consented to that transmission. Because the Court agrees, it uses Gene's orally modified class.

rior method of fairly and efficiently adjudicating the controversy. *See* Fed.R.Civ.P. 23(b)(3).

### a. *Rule 23(a) Threshold Requirements*

█ Gene has established all four threshold requirements of Rule 23(a).[4] Although Gene's final class-list is not before the Court, the class contains more than 879 members,[5] which is too numerous to make joinder practicable. *See Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir.1999). Regarding commonality and typicality, the requirements for class certification are not high. *See James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir.2001). Here, the questions of law or fact common to the class include whether BioPay violated the TCPA by transmitting unsolicited facsimiles. Because Gene's claim addresses those same questions, its claim is typical of the class claims. Finally, regarding adequate representation, Plaintiff's attorneys are qualified and experienced, plus Plaintiff's interests coincide with, and are certainly not antagonistic to, the interests of the class. Therefore, the Court finds that Plaintiff has met the Rule 23(a) requirements.

### b. *Rule 23(b)(3) Predominance*

█ Turning to the Rule 23(b)(3) requirements, courts have split over the issue of whether common questions predominate individual inquiries in TCPA class-certification motions. *Compare Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash.2007) (finding common questions predominated) *with Forman v. Data Transfer, Inc.,* 164 F.R.D. 400 (E.D.Pa.1995) (finding common questions did not predominate). In analyzing this requirement, courts inquire into how parties will litigate individual and common questions at trial. The Fifth Circuit articulated the critical substantive issue in this case as: "whether BioPay's fax advertisements were transmitted without the prior express invitation or permission of each recipient." *Gene and Gene, LLC,* 541 F.3d at 327.

█ According to Gene, the Database creates a common method of establishing the issue of consent. Because BioPay admitted that the Database is "the only evidence of consent BioPay can offer,"[6] and the class consists entirely of those contacts for which the Database does not reflect consent, Gene argues that class certification is appropriate. BioPay responds that common proof still does not exist because the list is still culled from multiple sources.[7] Although all these contacts were included in purchased lists, BioPay argues that some of these contacts may have otherwise provided their information at trade shows BioPay attended or through established business relationships with a BioPay affiliate. Additionally, BioPay argues that the Database does not accurately reflect whether contacts actually consented to receiving facsimiles.[8]

BioPay asserts that the case will become a myriad of mini-trials through its defense that certain contacts gave consent.[9] At this point, however, BioPay has not provided sufficient evidence of that consent. Instead, BioPay hypothesizes establishing that consent at trial by calling individual contact representatives as witnesses and asking if that contact ever provided consent. Because each the examination of each witness will serve as a

---

**4.** Because the Fifth Circuit's mandate focused on the Rule 23(b)(3) requirements, assuming Gene established the less demanding Rule 23(a) requirements, the Court will likewise focus on Rule 23(b)(3). *See Gene and Gene, LLC,* 541 F.3d at 325.

**5.** As noted, Gene orally modified its class at oral arguments. However, the new class should contain more than the 879 members originally cited in Gene's motion. *See* Mem. Supp. Mot. Class Cert. 2 (doc. 193–2).

**6.** Resp. Second Set Interrogs. Nos. 17–19, 21–22 (doc. 193–5).

**7.** The Fifth Circuit previously found that "BioPay culled fax numbers from a variety of sources over a period of time, such that class-wide proof of consent is not possible under the theory advanced in *Kavu.*" *Gene & Gene LLC,* 541 F.3d at 329.

**8.** BioPay submitted the deposition *Schildt,* in which he highlighted ten examples of where the Database does not reflect possible communication between BioPay and the contact.

**9.** Including at trade shows, through previous relationships with associates, and those that simply were not reflected in the Database.

mini-trial, BioPay asserts that individual questions will predominate common ones.

The Court disagrees. At trial, Gene will first have to prove that the class did not consent. It will attempt to do so through use of the Database, a method of common proof. As a defense, BioPay may then attempt to establish consent. Although BioPay imagines calling a representative of each individual contact to the stand, it has failed to establish why such an action is necessary. BioPay has provided little evidence beyond conjecture as to any individualized consent. BioPay argues that some contacts may have provided consent through an established relationship with BioPay's affiliate; this defense, however, does not apply to a single individual class member. Instead, it affects all members: if a pre-existing relationship equates to consent, then those contacts with such a relationship consented, and those without did not. Likewise, BioPay may provide common evidence regarding trade shows. Even if these questions require some degree of individualized evidence, they will not predominate the myriad common questions that this Court may efficiently try in a single action.

At this stage, however, the mere "possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification." *Hinman v. M & M Rental Center, Inc.,* 545 F.Supp.2d 802 (N.D.Ill.2008); *see also Blitz v. Agean, Inc.,* 197 N.C.App. 296, 677 S.E.2d 1, 10–11 (2009) (stating that the possibility that some members may later be removed should not automatically defeat certification). As Judge Frankel presciently observed at Rule 23(b)(3)'s inception, "it is assumed that individual questions peculiar to individual class members, but overweighed by the common questions, will or may remain after the common questions have been finally determined." Marvin E. Frankel, *Some Preliminary Ob-*

*servations Concerning Civil Rule 23,* 43 F.R.D. 39, 43 (1967).

In arguing over whether the Database allows the creation of a *Kavu* class, the Court finds that both parties make much ado about little. The critical question is not whether this case mirrors *Kavu,* but whether common issues of fact or law predominate over any individual issues. In *Kavu,* common questions of consent so predominated over individual questions that "there were therefore no questions of individual consent." *Gene and Gene LLC,* 541 F.3d at 328 (citing *Kavu,* 246 F.R.D. at 647). In essence, *Kavu* represents one extreme of cases seeking Rule 23(b)(3) class certification, with the other extreme being a case where consent depends entirely on individual issues and there are no common questions of consent. Those cases provide clear decisions. Most cases, however, fall messily between these two extremes; thus, "the unique facts of each case generally will determine whether certification is proper." *Id.* Here, the unique facts of the Database create common questions of consent: for example, whether the fact that BioPay obtained the contacts from the same purchased lists, then "blast faxed" advertisements to those contacts without prior communication, means that the contacts did not provide consent. Indeed, BioPay's representative testified that the only way to determine whether BioPay had consent is to look at the Database, which Gene has segregated in a way that reflects a lack of consent.[10] The individual questions concerning the few contacts that may have otherwise provided consent, but through BioPay's neglect is not reflected in the Database, certainly do not predominate over the common questions.

Therefore, in a class action consisting of a thousand members, the common issues of whether BioPay transmitted the facsimiles and whether the Database reflects consent, predominate the hypothetical individual questions of whether some individual members otherwise provided consent.[11]

**10.** Dep. Schildt 33 (doc. 193–7).

**11.** As the Fourth Circuit recently stated, a plaintiff "should present the trial court with some reasonable means of ensuring there will not be an inordinate number of proposed class members who do not belong to in the class, and

further show that he has, through thorough discovery and investigation, presented the trial court with as tailored a proposed class as practicable." *Blitz,* 677 S.E.2d at 10–11. Here, Gene has presented such evidence; BioPay's limited examples of possible non-class members, provid-

*c. Rule 23(b)(3) Superiority*

■ Under Rule 23(b)(3), the Court must also find that a class action is superior to other available methods for fairly and efficiently adjudicating the case. Fed.R.Civ.P. 23(b)(3). As with the predominance requirement, "the superiority analysis is fact-specific and will vary depending on the circumstances of any given case." *See Robertson v. Monsanto Co.,* 287 Fed.Appx. 354, 361 (5th Cir. 2008).

■ BioPay previously argued that a class action is not superior because Congress provided an individual enforcement mechanism in the TCPA. *See Forman,* 164 F.R.D. at 404 (finding that the statutory remedy provides adequate incentive for individual plaintiffs to bring suit on their own behalf). Class actions are unavailable, however, only if Congress expressly excludes them. *Califano v. Yamasaki,* 442 U.S. 682, 699–700, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Because Congress has not provided an express directive that class actions are inappropriate under the TCPA, the Court declines to follow *Forman's* example.

Here, in fact, several factors militate in favor of finding that a class-action is superior. Most importantly, by deciding the predominant common questions in one case, the Court avoids myriad separate trials surrounding BioPay's alleged "fax blasting." With nearly a thousand class members, judicial economy favors deciding those predominant common questions in one action, then finishing any individual questions that actually appear. Therefore, the Court finds that a class action the superior method of litigating this case.

*II. Sanctions*

■ Gene argues that BioPay's failure to produce the Database forms the basis for sanctions under Rule 37(c)(1). Specifically, Gene argues that BioPay should have produced the Database as part of initial disclosures, in response to the first set of interrogatories and requests for production, or after the deposition of BioPay's 30(b)(6) representative. The crux of Gene's arguments is the

ed without actual proof of consent, do not defeat

fact that BioPay produced a Microsoft Excel report exported by the Database, rather than the Database in its natural program, and that Excel report excluded the "Sales Notes" field. This Database, as discussed above, allows for the production of a class of plaintiffs where common questions predominate any individual ones. BioPay responds that it provided a more common version in the Excel report, that it inadvertently excluded the "Sales Notes" field from the report, and that Gene had many opportunities to follow-up on BioPay's error.

■ Courts have wide discretion in determining whether to impose sanctions. *See Betzel v. State Farm Lloyds,* 480 F.3d 704, 707 (5th Cir.2007). Sanctions are mandatory, however, when a party, without substantial justification, fails to fulfill the disclosure requirements. Fed.R.Civ.P. 37(c)(1); *see Quanta Servs., Inc. v. Am. Admin. Group, Inc.,* 2008 WL 5068804 at *2 n. 2, 384 Fed. Appx. 291, 295 n. 2 (5th Cir.2008).

Here, the Court cannot overstate the gravitas of non-disclosure. Both parties have spent copious hours and money on unnecessary litigation. While Gene argues that only BioPay could have prevented such waste, the Court hesitatingly disagrees. BioPay offers an "honest mistake" as its justification for not producing the Database in the manner Gene desired. On its own, that defense may not have protected BioPay from sanctions. *See R & R Sails, Inc. v. Ins. Co. of Pa.,* 251 F.R.D. 520, 524 (S.D.Cal.2008) (rejecting an honest mistake defense to a motion for sanctions). Here, however, BioPay apparently tried to provide the Database by providing it in Excel format. Also, when BioPay provided the Database without the "Sales Notes" field, it did provide the "Fax Permission" field, a field that appears every bit as important as the neglected field. Thus, it appears that BioPay attempted to comply with its discovery obligations in good faith. The Court, therefore, does not impose sanctions on BioPay for failure to provide the Database.

certification.

*Conclusion*

The Court finds that Gene has established the requirements for class certification. The Court further finds that sanctions are not warranted.

Accordingly, Plaintiff's motion (doc. 193) to re-certify a class is hereby GRANTED. Plaintiff's motion (doc. 189) for sanctions is hereby DENIED.