# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2010

No. 09-31191

Lyle W. Cayce
Clerk

GENE & GENE, L.L.C., Individually and as Representative of the Class,

Plaintiff - Appellee

v.

BIOPAY, L.L.C.,

Defendant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before CLEMENT, SOUTHWICK, and HAYNES, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this second interlocutory appeal pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, BioPay, L.L.C. (BioPay) challenges the district court's grant of Gene & Gene, L.L.C.'s (Gene) motion to re-certify a class. As in the first interlocutory appeal, *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008) (*BioPay I*), we REVERSE and REMAND.

## I. BACKGROUND

The Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227 *et seq.*, prohibits sending unsolicited advertisements from one fax machine to another. *Id*. at § 227(b)(1)(C). Between 2001 and 2005, BioPay used a third-party contractor to send over 4000 fax messages advertising its services to potential

No. 09-31191

clients in Louisiana. Gene is the owner of Marcello's Wine Market, a business that allegedly received a single, unsolicited fax from BioPay. Gene filed this class-action suit against BioPay alleging that BioPay violated the TCPA by sending unsolicited faxes to Gene and an unidentified number of class members. After discovery, Gene moved for class certification, proposing to define the class as:

> All recipients of unsolicited telefacsimile messages and/or advertisements within the State of Louisiana which were transmitted and/or initiated by or on behalf of BIOPAY, L.L.C., between the dates of January 21, 2001, and through the present.
>
> The named Class shall not include any recipients from whom the Defendant has received the prior express invitation or permission to receive the telefacsimile advertisements.

*BioPay I*, 541 F.3d at 323 n.5. The district court certified the class, determining that it met the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. *Gene & Gene, LLC v. BioPay, LLC*, 240 F.R.D. 239, 241–46 (M.D. La. 2006). BioPay brought an interlocutory appeal under Rule 23(f) and we "reverse[d] the district court's certification of the class and remand[ed] this case for further proceedings not inconsistent with this opinion," holding that "the determinative question of whether consent can be established via class-wide proof must, given the particular facts of this case, be answered in the negative." *BioPay I*, 541 F.3d at 329.

On remand, Gene immediately moved to reopen discovery. BioPay opposed the motion. The district court referred the matter to a magistrate judge, who reopened discovery "on the limited issue of class certification . . . ." BioPay appealed the magistrate judge's order to the district judge; BioPay also alternatively requested that the district court stay the proceedings and certify the question of whether *BioPay I* intended "to allow plaintiff a second bite at the class-certification apple" for immediate appeal to this court under 28

2

No. 09-31191

U.S.C. § 1292(b). The district court affirmed the magistrate judge's decision and declined to certify the question for interlocutory appeal. *Gene & Gene, L.L.C. v. Biopay, L.L.C.*, No. 05-121-JJB, 2008 U.S. Dist. LEXIS 97404, at *2 (M.D. La. Nov. 21, 2008).

Gene then issued additional discovery requests. Specifically, Gene requested the electronic production of a FileMaker Pro database[1] in its native format and BioPay complied. BioPay had previously produced a Microsoft Excel report exported by the FileMaker Pro program, but not the database itself. The FileMaker Pro database included a field not contained in the Excel report entitled "Sales Notes." *Gene & Gene, LLC v. BioPay, LLC*, No. 05-121-JJB, 2009 U.S. Dist. LEXIS 128256, at *14–15 (M.D. La. Nov. 10, 2009). Notably, the district court found that although the Excel report did not include the "Sales Notes" field, it did contain the "'Fax Permission' field, a field that appears every bit as important as the neglected field." *Id.* at *15–16. In addition to the Excel report, BioPay had previously produced selected printed screenshots from the FileMaker Pro program. The screenshots include the FileMaker Pro report for Marcello's Wine Market and show the "Sales Notes" field and its associated comments. After obtaining the FileMaker Pro database, Gene found it now had the "ability to easily generate a list of all [BioPay contacts] who: (1) do not have the Fax Permission box checked, (2) have no comments or entries in the Sales Notes field, and (3) whose information was obtained solely from a purchased list, among other search criteria or source information."

In *BioPay I,* we framed the critical substantive issue as "whether BioPay's fax advertisements were transmitted without the prior express invitation or permission of each recipient." *BioPay I*, 541 F.3d at 327. In its decision to re-certify the class, the district court agreed with Gene that the FileMaker Pro

---

[1] FileMaker Pro is a database application used by BioPay for its sales and marketing needs.

No. 09-31191

database creates a common method of establishing the issue of consent. *Gene & Gene,* 2009 U.S. Dist. LEXIS 128256, at *11. Finding that "the unique facts of the Database create common questions of consent," the district court held that common issues predominated individual questions under Rule 23(b)(2) and ultimately re-certified the class as "contacts that BioPay obtained from purchased lists, but only including those contacts that BioPay has no record of communicating with before transmitting a facsimile advertisement."[2] *Id.* at *4. In the same order, the district court declined to impose sanctions on BioPay for its failure to disclose the FileMaker Pro database in its native format during the original class certification litigation, finding "it appears that BioPay attempted to comply with its discovery obligations in good faith." *Id.* at *16. BioPay timely appealed.

## II.  ANALYSIS

### A.    Whether *BioPay I* Left Open the Possibility of Re-Certification on Remand

#### 1.    Standard of Review

We review "de novo a district court's interpretation of our remand order, including whether the law-of-the-case doctrine or mandate rule forecloses any of the district court's actions on remand." *United States v. Elizondo*, 475 F.3d 692, 695 (5th Cir. 2007). This case, however, is before the court pursuant to a Rule 23(f) interlocutory appeal. The version of Rule 23(f) in effect at the relevant time stated that "[a] court of appeals may permit an appeal from an order of a district court granting or denying class action certification under this rule if

---

[2] In Gene's motion for class re-certification, it argued that the class should exclude any contact for which comments appear in the "Sales Notes" field, a definition that would exclude Gene. The district court found, however, that Gene "orally modified" its class proposition during argument to exclude "only those contacts for which comments appeared in the 'Sales Notes' field before the recorded date of facsimile transmission." *Gene & Gene,* 2009 U.S. Dist. LEXIS 128256, at *4–5 n.3.

4

application is made to it within ten days after entry of the order." FED. R. CIV. P. 23(f) (2007). "The text of the rule makes plain that the sole order that may be appealed is the class certification; no other issues may be raised." *Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.,* 482 F.3d 372, 380 (5th Cir. 2007) (quotations omitted). In *Regents*, however, the court also noted that "review of the factual and legal analysis supporting the district court's decision is appropriate on review of class certification . . . ." *Id.* at 381. Because the district court's analysis of our mandate in *BioPay I* was a predicate for class re-certification, we consider its interpretation of the mandate.

2.    Analysis

The law of the case doctrine provides that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006) (quotations omitted). Exceptions to the doctrine allow reexamination of issues decided on appeal only if "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." *Id.* at 897. The law of the case doctrine applies to matters decided on interlocutory appeals. *Royal Ins. Co. v. Quinn-L Capital Corp.*, 3 F.3d 877, 881 (5th Cir. 1993). The doctrine is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950); *see also Fontainebleau Hotel Corp. v. Crossman,* 286 F.2d 926, 928 (5th Cir. 1961) (quoting *U.S. Smelting*). The principles surrounding the law of the case doctrine apply equally to the mandate rule, "which is but a specific application of the general doctrine of law of the case." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) (quotations omitted). "Absent exceptional circumstances, the mandate rule compels

## No. 09-31191

compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id*.

BioPay first argues that *BioPay I* is the law of the case and that it forecloses further discovery on remand and class re-certification. Gene, as it did in its motion to reopen discovery below, relies heavily upon the continuing duty of district judges to assess class certification orders under Rule 23(c)(1)(C) to justify the reopening of discovery and its second attempt at class certification. Rule 23(c)(1)(C) provides that "[a]n order that grants or denies the class certification decision may be altered or amended before final judgment." While this rule vests significant discretion in the district court, "the district court's discretion in managing trials [only] extends on remand to all areas not covered by the higher court's mandate." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 775 (5th Cir. 1999) (quotations omitted). Rule 23(f) is not an interlocutory tool to clarify issues and provide a roadmap for litigants to reformulate their arguments; it is, rather, a tool by which courts of appeals are given "unfettered discretion whether to permit the appeal." FED. R. CIV. P. 23(f) advisory committee's note. "Rule 23(f) permits the court of appeals to accelerate appellate review; but to ensure that there is only one window of potential disruption, and to permit the parties to proceed in confidence about the scope and stakes of the case thereafter, the window of review is relatively small." *McNamara v. Felderhof,* 410 F.3d 277, 281 n.9 (5th Cir. 2005) (quotations omitted) (declining appellate jurisdiction of an untimely-filed Rule 23(f) petition).

To be certain, in some scenarios, a district court may properly alter or amend a certification order after remand from this court on a Rule 23(f) appeal; a Rule 23(f) decision does not operate to automatically divest the district court of its powers under Rule 23(c)(1)(C). For example, if a district court certifies a

class after preliminary discovery[3] and the court of appeals affirms pursuant to Rule 23(f), and then during subsequent discovery it becomes clear that the district court needs to alter, amend, or even decertify the class, the district court can and should do so under Rule 23(c)(1)(C). *See Prado-Steinman v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000) (suggesting appeals courts should err towards declining to hear Rule 23(f) appeals because "[i]f a decision on class certification has been fully reviewed and affirmed on an interlocutory basis, both the parties and the district judge may feel constrained from revisiting the issue . . . .").

This case presents a very different procedural posture. Discovery was complete when Gene successfully moved for class certification. When this court exercised its discretion and heard BioPay's Rule 23(f) appeal, both parties had another full opportunity to argue the propriety of the class certification decision. When this court reversed, we held that "the determinative question of whether consent can be established via class-wide proof must, given the particular facts of this case, be answered in the negative. Gene has failed to advance a viable theory of generalized proof" concerning lack of consent. *BioPay I*, 541 F.3d at 329. The district court interpreted this language, along with this court's remand "for further proceedings not inconsistent with this opinion," as meaning "there is nothing in the opinion to preclude Gene from asserting a viable theory on remand." *Gene & Gene,* 2008 U.S. Dist. LEXIS 97404, at *2 (quotations omitted) (affirming magistrate judge's decision to reopen "discovery limited to class certification").

The issue of class certification was expressly decided by this court in *BioPay I* and "that should be the end of the matter." *U.S. Smelting*, 339 U.S. at

---

[3] As it is encouraged to do. *See* FED R. CIV. P. 23(c)1(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action."). *See also* FED R. CIV. P. 23 advisory committee's notes (". . . it is appropriate to conduct controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis.").

198. We "reverse[d] the district court's certification of the class and remand[ed] this case for further proceedings not inconsistent with this opinion," *BioPay I*, 541 F.3d at 329, not for a renewed foray into the same issue but for a merits determination and disposition of Gene's individual claim. We agreed to "accelerate appellate review" and exercised our unfettered discretion under Rule 23(f) to hear *BioPay I* prior to final judgment in order to "permit the parties to proceed in confidence about the scope and stakes of the case thereafter." *McNamara,* 410 F.3d at 281 n.9 (quotations omitted). *BioPay I* is the law of this case. Accordingly, we hold that the district court misinterpreted the mandate and abused its discretion in reopening discovery as to class certification on remand. Under the procedural posture presented here,[4] *BioPay I* foreclosed the re-litigation of the class certification and the district court erred in considering the "new" evidence disclosed during the reopened discovery.

Even assuming, *arguendo,* that the district court's decision to reopen discovery was proper, the "new" evidence disclosed on remand was not "substantially different" from the evidence before this court in *BioPay I*.[5] *See Fuhrman,* 442 F.3d at 897. "[U]nder the law of the case, there is no [generalized proof of lack of individual consent] unless plaintiffs produced new evidence of [it that was] not before the" *BioPay I* court. *See Griffin v. Box (Griffin II),* 956 F.2d 89, 93 (5th Cir. 1992) (finding plaintiffs presented no substantial evidence of

---

[4] We emphasize that our holding that the district court misinterpreted the mandate in this case is narrowly limited to the facts and procedural posture presented here. We need not address the specific contours of when a district court may properly invoke its powers under Rule 23(c)(1)(C) after a Rule 23(f) decision from this court.

[5] Although Gene repeatedly insists that Biopay intentionally withheld evidence, the district court declined to impose sanctions for the non-disclosure of the database, specifically noting that "when BioPay provided the Database without the 'Sales Notes' field, it did provide the 'Fax Permission' field, a field that appears every bit as important as the neglected field." 2009 U.S. Dist. LEXIS 128256 at *15–16. The district court concluded by finding that "it appears that BioPay attempted to comply with its discovery obligations in good faith." *Id.*

estoppel beyond that rejected by the court in *Griffin I*, after *Griffin I* explicitly left open the possibility that plaintiffs might prove estoppel with a "*different, more complete* showing at trial on the merits" (emphasis in original)).

As Gene admits, although BioPay did not produce the FileMaker Pro database in its native format in 2006, BioPay *did* produce selected screenshot printouts of that database at that time. Gene contends that it "now knows" that "an objective methodology exists to identify all class members who gave their consent" as a result of the disclosure of the database in its native format. But the screenshot printouts of the FileMaker Pro database produced in 2006 show every field needed to determine whether a particular contact may have consented to receive a fax. While Gene repeatedly characterizes the database as containing fields that allow it to offer generalized proof of consent, the screenshot printouts show the same fields. The FileMaker Pro database and its search capabilities certainly allow for a more user-friendly and less time-consuming investigation into the circumstances regarding BioPay's faxes to its Louisiana contacts. But even assuming that the "new" theory of identifying class members who did not give their consent to receive a fax is viable, the selected screenshot printouts demonstrate that this theory could have been advanced to the court in *BioPay I*. Although the record does not reflect the exact number of screenshot printouts disclosed in 2006, "there is a complete lack of any showing that the 'newly discovered' evidence could not have been discovered by proper diligence." *Luhrsen v. Vantage S.S. Corp.*, 514 F.2d 105, 106 (5th Cir. 1975) (footnote omitted). Accordingly, we alternatively hold that the evidence disclosed on remand was not "substantially different" from the evidence disclosed before *BioPay I* and that the "substantially different evidence" exception to the law of the case doctrine does not apply.[6]

---

[6] Gene does not assert that either of the other two exceptions to the law of the case doctrine apply to this case. *See Fuhrman*, 442 F.3d at 896.

No. 09-31191

## III.  CONCLUSION

The district court's decision to re-certify the class is REVERSED and this case is REMANDED to the district court for a determination and disposition of Gene's individual claim against BioPay.

No. 09-31191

LESLIE H. SOUTHWICK, Circuit Judge, concurring.

I concur with the result reached by my able colleagues in the majority. I would reach that result by a slightly different route, though.

The majority concludes that the district court erred in reopening discovery and allowing for the issue of class certification to be considered again on remand. I disagree. In my view, the district court reasonably interpreted our decision on the initial appeal to have left the certification question open.

The penultimate two paragraphs of this court's opinion that resolved the first appeal provided guidance to the district court on remand.

> Thus, the determinative question of whether consent can be established via class-wide proof must, given the particular facts of this case, be answered in the negative. Gene has failed to advance a viable theory of generalized proof to identify those persons, if any, to whom BioPay may be liable under the TCPA . . . .
>
> We emphasize again, however, that we do not hold as a matter of law that the consent requirement in the case before us defeats the possibility of class certification. We merely hold that Gene has failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class involved in this case; that this leads to the conclusion that myriad mini-trials cannot be avoided; and that, given these conclusions and those we have reached above, the district court abused its discretion in certifying the class.

*Gene & Gene LLC v. BioPay LLC,* 541 F.3d 318, 329 (5th Cir. 2008). We then "reverse[d] the district court's certification of the class and remand[ed] this case for further proceedings not inconsistent with this opinion." *Id.*

The majority in today's opinion give cogent and even compelling reasons to conclude that one appeal, one decision, were all that the class certification question should have been given. Regardless, the panel that ruled on the initial appeal set the law for this particular case. My interpretation of the two

11

paragraphs I have quoted from that opinion is that they left the issue open for further consideration. I will summarize my reading of them.

I agree that the earlier of the two paragraphs did not suggest the door was ajar on remand on the certification question. It was the next paragraph on which the district court could reasonably conclude that the question as first posed was answered negatively by this court, but a rephrased question with new evidence might deserve a different answer. We did "not hold as a matter of law that the consent requirement in the case before us defeat[ed] the possibility of class certification." *Id*. We instead held that "Gene has failed to advance any viable theory" to support generalized proof. *Id*.

It makes sense to me that the district court would read this language as allowing something further to be done regarding class certification. That reading would come from our emphasizing that we were making a factual determination – and did not hold as a matter of law – that the propriety of class certification was not shown.

What was clearly stated is that our opinion should not be read as foreclosing the *possibility* of certification. Perhaps that was meant as a caveat applicable to the next case with similar issues. On the other hand, the opinion stated that the requirement of consent "in the case before us," not in cases like this, did not defeat the possibility of a class action.

I will not explain the point further. Written in the way it was, I find no error when the district court proceeded as it did on remand.

Even though I conclude that the district court did not err in allowing further discovery and again considering the issue of class certification, I agree with the majority that nothing in the allegedly new evidence allows certification. The majority's analysis in the penultimate two paragraphs of today's opinion expresses my views on that point, and thus I concur.