# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2014

Lyle W. Cayce
Clerk

No. 12-41286

KLAMATH STRATEGIC INVESTMENT FUND, by and through St Croix Ventures (Managing member),

Plaintiff–Appellee

v.

UNITED STATES OF AMERICA,

Defendant–Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:04-CV-278

Before BARKSDALE, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

This is the second time this case has appeared before this Court. In the first appeal, we held that the district court had erred in failing to consider which partner—Charles "Cary" Patterson ("Patterson") and Harold Nix ("Nix") or Presidio Advisory Services ("Presidio")—effectively controlled Klamath Strategic Investment Fund, LLC ("Klamath") and Kinabalu Strategic Investment Fund, LLC ("Kinabalu") (collectively, the "Partnerships") at the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-41286

time certain expenses were incurred. *Klamath Strategic Inv. Fund ex rel St. Croix Ventures v. United States* (*Klamath IV*), 568 F.3d 537, 551 (5th Cir. 2009). On remand, the district court held that, because Nix and Patterson controlled the Partnerships at the time the operating expenses were incurred, the expenses were tax deductible. The United States makes two arguments on appeal. First, it argues that Presidio, not Nix and Patterson, effectively controlled the Partnerships at the time the transactions occurred. Second, the United States claims that the district court exceeded its jurisdiction in holding that Nix and Patterson are entitled to personal deductions for certain fees paid in exchange for investment advice. We AFFIRM.

## I. BACKGROUND

### A. Factual Background

Nix and Patterson are partners in the law firm Nix, Patterson & Roach, LLP. Their law firm represented the state of Texas in tobacco litigation, and when the case settled, Nix and Patterson expected to receive significant attorneys' fees, approximately $30 million per partner from 1998 to 2000. Nix and Patterson asked Pollans & Cohen, their accounting firm, to help them investigate investment opportunities. Pollans & Cohen identified Presidio, a firm that claimed to specialize in foreign currency trading, as a firm that could provide Nix and Patterson with opportunities to invest in foreign currency. After Pollans & Cohen conducted due diligence and Nix and Patterson met with representatives of Presidio a few times, Nix and Patterson decided to invest in foreign currencies through Presidio. Nix and Patterson each paid Sid Cohen ("Cohen"), a partner at Pollans & Cohen, $250,000 for his help in identifying Presidio. Nix and Patterson each reported Cohen's $250,000 advisory fee on their individual tax returns.

Presidio executed its investment strategy through a series of LLCs. First Presidio formed Klamath and Kinabalu as LLCs, which elected to be taxed as

partnerships for federal tax purposes. Presidio also formed two single-member LLCs—St. Croix for Patterson and Rogue for Nix—which are disregarded for tax purposes (their activities are reported directly on Patterson's and Nix's tax returns). Patterson owned 100% of St. Croix, and St. Croix became a 90% partner of Klamath. The remaining 10% membership of Klamath consists of Presidio Resources LLC (9% ownership of Klamath) and Presidio Growth LLC (1% ownership of Klamath). The set-up for Nix/Rogue/Kinabalu was nearly identical: Nix owned 100% of Rogue; Rogue owned 90% of Kinabalu; Presidio Resources LLC owned 9% of Kinabalu; and Presidio Growth LLC owned 1% of Kinabalu.

Presidio's strategy was structured to take place in three stages over a seven-year period, but Nix and Patterson retained the ability to withdraw from the plan. Nix and Patterson ultimately decided to withdraw before the end of the first stage.

## B.    Procedural Background

This litigation initially arose from Final Partnership Administrative Adjustments ("FPAAs") that the IRS issued in 2004 to Klamath and Kinabalu. The IRS disagreed with the Partnerships' calculation of their tax basis. Specifically, the IRS argued that "the transactions were shams or lacked economic substance and should be disregarded for tax purposes[,] . . . made adjustments to operational expenses reported by the Partnerships[,] and asserted accuracy-related penalties." In response, the Partnerships filed suit seeking readjustment of the partnership items pursuant to 26 U.S.C. § 6226.

The district court first granted partial summary judgment for Nix and Patterson, holding that the Partnerships' tax treatment of the amounts borrowed to fund the Partnerships was proper. *Klamath Strategic Inv. Fund, LLC, ex rel St. Croix Ventures, LLC v. United States* (*Klamath I*), 440 F. Supp. 2d 608, 614, 625–26 (E.D. Tex. 2006). Following a bench trial, the district court

found that, while Nix's and Patterson's primary motivation in entering these foreign investments was to make a profit, the loan transactions lacked economic substance and should be disregarded. *Klamath Strategic Inv. Fund, LLC v. United States* (*Klamath II*), 472 F. Supp. 2d 885, 896 (E.D. Tex. 2007). The court found that Presidio and National Westminster Bank ("NatWest"), the bank that had loaned money to Patterson and Nix to fund the Partnerships, had a private agreement that the investment transactions were only to be used to generate tax losses, and so Presidio and NatWest lacked a true profit motive. *Id.* at 896–98. But, because Nix and Patterson acted in good faith, they were not subject to tax penalties for Presidio's and NatWest's actions. *Id.* at 905.

The issues relevant to this appeal stem from *Klamath Strategic Investment Fund v. United States* (*Klamath III*), Nos. 5:04-CV-278, 5:04-CV-279, 2007 WL 1051766 (E.D. Tex. Apr. 3, 2007). In *Klamath III*, the district court held that Nix and Patterson were entitled "to deduct the operational and interest expenses associated with the loan and foreign currency exchange transactions." *Id.* at *3. The district court reasoned that, because Nix and Patterson paid these expenses and entered into the transactions to make a profit, the expenses were deductible. *Id.*

On appeal, this Court vacated the portion of the district court's decision regarding the deduction of the operating expenses. *Klamath IV*, 568 F.3d at 553. We acknowledged that the district court had "concluded that the partners had different motivations: Nix and Patterson at all times pursued the investment strategy with a genuine profit motive, while Presidio's primary intent was to achieve a tax benefit." *Id.* at 551. Thus, as we explained, "[t]he crucial inquiry, then [was] which partner's intentions should be attributed to the Partnership." *Id.* In *Klamath III*, the district court had determined that Nix and Patterson's motives should be attributed to the Partnerships "with little explanation," reaching that conclusion because Nix and Patterson paid

the operational expenses. *Id.* This Court concluded that the district court had erred in failing to determine who effectively controlled the Partnerships at the time the expenses were incurred and remanded the case for the district court to answer that question. *Id.*

On remand, the district court concluded that Nix and Patterson effectively controlled the Partnerships at the time the operating expenses were incurred. *Klamath Strategic Inv. Fund, LLC v. United States (Klamath V)*, Nos. 5:04-CV-278, 5:04-CV-279, 2012 WL 4889805, at \*7 (E.D. Tex. Sept. 24, 2012). Considering the facts as a whole, the district court made several findings of fact that led it to conclude that Nix and Patterson had effective control of the Partnership at the time in question:

> [Nix and Patterson] set the parameters within which Presido could operate by means of the partnership agreements. These partnerships were formed and existed for a single purpose—to affect an investment strategy selected by Nix and Patterson. Presidio was the managing partner only because Nix and Patterson made it so. Not only did the partnership agreements **define** Nix and Patterson's investment strategy, they **confined** Presidio to that strategy in express and unequivocal terms; and if all else failed, Nix and Patterson could shut down the whole process by withdrawing from the partnerships they had created.

*Id.* at \*5. While acknowledging that Presidio played a role, the district court concluded it was "managerial only" and "not the true determining influence, *i.e.*: control." *Id.*

The district court, on remand, also determined that it had jurisdiction to determine whether Nix and Patterson were entitled to a personal deduction on their individual tax returns for the $250,000 fee paid to Cohen. *Id.* at \*6. The district court concluded that this Court had "remand[ed] the specific question of the Pollans & Cohen fees (as operating expenses)" and that "[t]he Fifth Circuit certainly would not have expressly directed [the district court], through

No. 12-41286

its remand, to take up a matter (the fees paid to Pollans & Cohen) that it had no authority to address." *Id.* The district court ultimately found that Nix and Patterson were entitled to a personal deduction for Cohen's fees. *Id.* at \*7.

The United States timely appealed.

## II.  JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1346(e).[1] Because this is an appeal of a final judgment of a district court, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III.  DISCUSSION

### A.  Standard of Review

The question of who has effective control over an entity is a question of fact, which we review for clear error. *See Gustin v. United States, I.R.S.* 876 F.2d 485, 491 (5th Cir. 1989) (reviewing whether an individual was a "responsible person" under a tax statute for clear error); *see also Coltharp v. Goodwill Indus. of El Paso Inc.*, No. 98-50252, 232 F.3d 210, \*4 (5th Cir. 2000) (unpublished) ("[T]he question of whether the United States retained sufficient control over its independent contractor within the meaning of Texas law so as to be liable thereunder on the basis asserted is a question of fact, and we review the district court's finding that the United States did not retain sufficient such control under the clearly erroneous standard."). The question of what factors are legally relevant in determining effective control is a question of law, which we review de novo. *See Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 341 (5th Cir. 2010) (reviewing the tax court's determination of whether the elements for "reasonable cause" were proven and reviewing de novo the

---

[1] We address the United States' argument concerning jurisdiction—that the district court exceeded its jurisdiction in finding that Nix and Patterson are entitled to personal deductions for the fees they paid Cohen—in greater detail in Part III(B).

6

"determination of what elements must be present to constitute reasonable cause" (citations and internal quotation marks omitted)).

This Court reviews questions of the district court's jurisdiction de novo. *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 489 (5th Cir. 2002). The Court also reviews a district court's interpretation of a remand order, including whether the law-of-the-case doctrine or the mandate rule applies, de novo. *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 702 (5th Cir. 2010) (citation omitted).

**B. Analysis**

> 1. Whether the district court erred in determining that Nix and Patterson effectively controlled the Partnerships

The United States makes three arguments to support its claim that the district court erred in finding that Nix and Patterson effectively controlled the Partnerships at the time the operating expenses were incurred. First, the United States argues that the district court based its finding on factors that the Fifth Circuit had already held were insufficient to show Nix and Patterson exercised effective control. Second, it argues that the factors the district court relied on are legally irrelevant to the issue of effective control. Finally, the United States claims that, even assuming the factors the district court relied upon are correct factors, the record does not support the district court's findings. We address each of these arguments in turn.

> *i. Whether the district court relied on factors that this Court has already held are insufficient to establish effective control*

The United States argues that "[t]he district court's analysis of the 'effective control' issue is flawed on its face" in light of the earlier appeal in this case. In the first appeal, this Court held that "[n]one of the arguments articulated by the Partnerships or the district court persuade us that the motives of Patterson and Nix, to whom the overall control and management of

the Partnerships was expressly denied under the LLC agreements, should be attributed to the Partnerships." *Klamath IV*, 568 F.3d at 551. According to the United States, on remand, the Partnerships simply repeated—and the district court simply adopted—those previously rejected arguments, but this Court's prior ruling forecloses reliance on those factors.

After comparing the district court's initial opinion (*Klamath III*), our opinion in the first appeal (*Klamath IV*), and the district court's opinion on remand, it is clear that the United States is incorrect. On remand, the district court relied on factors different from those this Court rejected in the first appeal. In the first appeal, we noted that "[t]he district court appears to have concluded, with little explanation, that Patterson and Nix's motives must be attributed to the Partnerships because they paid the expenses at issue here and reported them on their individual tax returns." *Klamath IV*, 568 F.3d at 551. And the district court's initial opinion supports that characterization of the order: in *Klamath III*, the district court did very little analysis and appears to have found that Nix and Patterson had effective control solely because they actually paid the operating expenses and included them on their personal tax returns. *See Klamath III*, 2007 WL 1051766 at *3. By contrast, on remand, the district court did not focus on the fact that Nix and Patterson paid the operating expenses, relying instead on several different factual findings to conclude that Nix and Patterson had effective control of the Partnerships. *See Klamath V*, 2012 WL 4889804 at *4–5. Thus, we conclude that the district court did not rely on factors we have previously held were insufficient to establish effective control.

*ii. Whether the district court relied on legally irrelevant factors in finding that Nix and Patterson had effective control*

The United States next argues that the factors the district court used to determine effective control are legally irrelevant. The United States claims:

(1) even if a member of the LLC sets the scope of the managing-member's authority, the managing member still controls the LLC; (2) the fact that an LLC was set up to achieve the investment strategy of the loan investor–member does not mean that the investor–member controls the LLC; (3) if a non-managing member of the LLC selects the managing member, that does not necessarily mean that the non-managing member controls the LLC; and (4) a member's right to withdraw from an LLC does not indicate effective control of the LLC.

We disagree and hold that the district court relied on legally relevant factors to determine who effectively controlled the Partnerships. The primary difficulty with the United States' argument is that the United States never identifies what factors *should* be considered legally relevant, and it cites no law explaining what the correct and legally relevant factors are.[2] Further, we have found no case law to support the United States' argument that the factors the district court relied on are incorrect.

The two cases that the Government cites to show that the district court relied on legally irrelevant factors——*Redlands Surgical Services v. Commissioner*, 113 T.C. 47 (1999) and *Zink v. United States*, 929 F.2d 1015 (5th Cir. 1991)—do not advance its argument. In *Redlands*, the tax court considered whether the petitioner had formal control over a surgery center and found that, although the petitioner could veto expansion of the center, that fact did "not establish that [the] petitioner [had] effective control" over the way the

---

[2] In addressing this point in its brief, the United States argues that Delaware law shows that the district court considered legally irrelevant factors in deciding the question of effective control. The Partnerships counter that Delaware law actually supports the district court's reliance on those factors. These arguments about Delaware law, however, are not germane to the question of what factors are legally relevant to the question of effective control. In other words, the parties are actually using Delaware law to bolster their arguments about the accuracy of the district court's factual findings—not to argue that the district court's factors were legally irrelevant.

center conducted activities.  113 T.C. at 80.  In *Zink*, this Court considered whether the Zinks' activities were sufficient to establish that that they were in trade or business, ultimately concluding that, although the Zinks could "yank their investment," the United States did not establish that they had control over the activities of the business.  929 F.2d at 1022–23.

The United States uses these cases to argue that a member's ability to withdraw from an LLC and a member's ability to limit the control of a managing member are not legally relevant factors.  That argument, however, does not follow from either *Redlands* or *Zink*.  The question of whether the findings are sufficient to show effective control—what *Redlands* and *Zink* discuss—is a fact-based question and different from the threshold question of whether the factors are relevant.  Neither case holds that veto power over the operations of a business or ability to withdraw funding are legally irrelevant factors; in fact, the opinions consider those factors when determining whether the individuals in question had control.  While the facts in *Redlands* and *Zink* may have been insufficient to demonstrate effective control, those cases do not show that the factors the district court considered are legally irrelevant.  Thus, we hold that the district court did not rely on legally irrelevant factors in answering the question of who effectively controlled the Partnerships.

*iii.  Whether the record supports the district court's factual findings*

The United States also argues that, even if the factors the district court used are legally relevant, the record does not support the district court's factual findings.  Specifically, the United States alleges: (1) the district court "inaccurately suggest[ed] that Patterson and Nix played an active role in delineating the confines of Presidio's managerial authority"; (2) the Partnership was not created to "implement an investment strategy determined by Patterson and Nix"; (3) Presidio made itself managing member (i.e., Nix and Patterson did not select Presidio); (4) Nix and Patterson could not terminate

the Partnership by withdrawing; (5) Nix and Patterson never acted "in derogation of Presidio's exclusive management authority"; and (6) the district court improperly analogized to investor–money-manager relationships in making its findings.

After reviewing the record, we hold that the district court did not clearly err in finding that Nix and Patterson effectively controlled the Partnerships. In arguing that the district court clearly erred, the Government essentially advances one argument: to support a finding that Nix and Patterson effectively controlled the Partnerships—notwithstanding Presidio's role as managing member—"the record would have to contain evidence of managerial actions by Nix and Patterson inconsistent with Presidio's exclusive management rights under the terms of the LLC agreements." But, this Court has previously held that courts should take a holistic view in determining who controls a partnership. *See Agro Sci. Co. v. Comm'r*, 934 F.2d 573, 576–77 (5th Cir. 1991) (weighing multiple characteristics). Here the district court took that holistic view, making several findings of fact in reaching its conclusion that Nix and Patterson effectively controlled the Partnerships:

> [Nix and Patterson] set the parameters within which Presido could operate by means of the partnership agreements. These partnerships were formed and existed for a single purpose—to affect an investment strategy selected by Nix and Patterson. Presidio was the managing partner only because Nix and Patterson made it so. Not only did the partnership agreements **define** Nix and Patterson's investment strategy, they **confined** Presidio to that strategy in express and unequivocal terms; and if all else failed, Nix and Patterson could shut down the whole process by withdrawing from the partnerships they had created.

*Klamath V*, 2012 WL 4889805 at *5.

The United States takes issue with specific factual findings.   For example, the United States argues that "Patterson and Nix could not terminate

[the Partnerships] by withdrawing from them." But, the record shows that Nix and Patterson were 90% owners of the Partnerships, retained the right to withdraw at the end of each investment stage, and when Nix and Patterson withdrew, the practical result was the end of the Partnerships. Even if Nix and Patterson's withdrawal did not legally necessitate the dissolution of the partnership, their decision to withdraw had that practical effect. Thus, the United States' arguments do not leave a "definite and firm conviction" that the district court made a mistake. *See Payne v. United States*, 289 F.3d 377, 381 (5th Cir. 2002) ("In reviewing factual findings for clear error, [this Court] defer[s] to the findings of the district court unless we are left with a definite and firm conviction that a mistake has been committed.").

Moreover, the record affirmatively supports the district court's factual finding that Nix and Patterson had effective control. The district court correctly found that the agreement defined the investment strategy and confined Presidio to that investment strategy. The district court was also correct that the Partnerships were formed for a single purpose—for Nix and Patterson to engage in foreign currency investments. Finally, as the Partnerships point out, Nix and Patterson had a 90% ownership interest in the Partnerships, a factor that in other tax contexts suggests effective control. *See, e.g.*, Treas. Reg. §§ 1.52-1(d)(3)(i), 1.414(c)-2(c)(2)(i)–(iii).

Thus, we hold that the district court did not clearly err in finding that Nix and Patterson effectively controlled the Partnerships.

2. Whether the district court exceeded its jurisdiction in finding that Nix and Patterson were entitled to personal deductions for the $250,000 payments to Pollans & Cohen

The United States also claims that the district court lacked jurisdiction to determine whether Nix and Patterson were entitled to a personal deduction for the $250,000 fee each paid to Pollans & Cohen. Because this is a

partnership-level proceeding, the United States argues, the district court exceeded its jurisdiction in considering personal tax questions. While acknowledging that, in the first appeal, the Fifth Circuit included the $250,000 fee in a list of operational expenses to be addressed on remand, the United States claims that the law-of-the-case doctrine does not apply here because finding the district court had jurisdiction would constitute manifest error.

The Partnerships, however, respond that the law-of-the-case doctrine means the district court had jurisdiction to address the $250,000 fee. They also claim that, even assuming the Fifth Circuit erred in remanding for consideration of the $250,000 fee, the error was not so manifest as to invoke the exception to the law-of-the-case doctrine.

We hold that the law-of-the-case doctrine applies here. "Where the question of jurisdiction was actually raised and argued before the prior panel and the panel subsequently exercised jurisdiction without explanation in its opinion, it is clear enough that the necessary assumption is that the prior panel found subject matter jurisdiction present, and the ruling constitutes law of the case." *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 283 (5th Cir. 2011) (citation and internal quotation marks omitted). Here, the question of jurisdiction was raised and argued in the first appeal. Specifically, the United States disputed the district court's authority to determine whether Nix and Patterson were entitled to this personal deduction, *Klamath IV*, 568 F.3d at 543, yet the Court nevertheless included the $250,000 on the list of operating expenses and then remanded to the district court a question involving the operating expenses, *id.* at 548–49 ("These operational expenses include interest on the loans, a breakage fee, a management fee paid to Presidio, and a $250,000 fee paid to Pollans & Cohen."). Further, this Court has previously held that there is no jurisdiction exception to the law-of-the-case doctrine. *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 273 (5th Cir. 1999) (citing *Ferreira v. Borja*,

No. 12-41286

93 F.3d 671, 674 (9th Cir. 1996) ("Surely a court that has decided that it has jurisdiction is not duty-bound to entertain thereafter a series of repetitive motions to dismiss for lack of jurisdiction.")).  We therefore hold that the law-of-the-case doctrine applies and the district court did not exceed its jurisdiction.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM.